Ritz *v.* Rafail, Appellant.

Argued September 26, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Alex Z. Goldstein,* with him *Goldstein & Goldstein,* for appellants.

*T. A. Waggoner, Jr.,* with him *J. C. Glassburn,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, January 2, 1951:

On July 1, 1946 Nick Ritz and Elizabeth Ritz, plaintiffs, leased to Ferris Rafail and Elias Rafail, defendants, the property situate at 98 E. Main Street, Uniontown, for a term of 5 years at a rental of $125 per month. The lessees covenanted that they would use

and occupy the premises only as a restaurant and that they would not "attempt at any time during the term of this lease to remove or transfer from the said demised premises the restaurant liquor license issued by the Liquor Control Board of the Commonwealth of Pennsylvania, under penalty of instant forfeiture and the right of re-entry for such breach." The property had been used as a restaurant for many years during all of which a liquor license was maintained there, the licensee being either the lessors themselves or their tenants.

Defendants gave to one Esther Salaim, a relative by marriage, a judgment note of $5,000 for money alleged to be due her for a loan. On May 17, 1948, having issued execution on the note, she purchased at sheriff's sale the fixtures and personal property in the restaurant, said to be worth about $3,500, for $18.25; the fixtures were removed and defendants abandoned the premises and paid no rent after May 1, 1948. After returning the license to the Pennsylvania Liquor Control Board at Harrisburg where it is now being held, they executed a bill of sale purporting to transfer the license to Esther Salaim in satisfaction of her judgment, subject to the approval of the Liquor Control Board. The court below found as a fact that the purpose of this alleged sale was to evade their agreement that they would not attempt to remove or transfer the license. Since their surrender of the license to the Board they have been making payments for its renewal from year to year. Plaintiffs have resumed possession of the property and since January 1, 1949 have been operating it as a restaurant on their own account. They brought a bill in equity against defendants for an injunction to restrain the latter from selling, transferring or removing the license from the leased premises. The court below granted a perpetual injunction against a transfer and sale to any other person or to another location.

It is defendants' contention that a liquor license is not a property right but only a privilege, (*Spankard's Liquor License Case*, 138 Pa. Superior Ct. 251, 259, 10 A.2d 899, 903) and that therefore equity has no jurisdiction to enforce a covenant not to sell or transfer it. Whatever, however, may be the nature or legal status of a liquor license as between the State and the licensee, negative covenants such as that here involved, as well as affirmative agreements to transfer such licenses, have been uniformly enforced in our appellate courts, subject always, of course, to the approval of the Liquor Control Board to any transfer: *Cochrane v. Szpakowski*, 355 Pa. 357, 49 A. 2d 692; *Pavlick v. Zellermeyer*, 359 Pa. 278, 59 A.2d 92; *Rekas v. Dopkavich*, 362 Pa. 292, 66 A. 2d 230; *Guzzi v. Czaja*, 163 Pa. Superior Ct. 597, 63 A. 2d 426. See also the following lower court decisions: *DiPietro v. Cichilli*, 38 D. & C. 404; *Yuengling Realty Co. v. Basarob*, 49 D. & C. 449; *Volosin v. Letchko*, 39 Luzerne Legal Register Reports 210; *Procopio v. Staskiel*, 70 D. & C. 252. It would be unrealistic to fail to recognize that a liquor license is of a peculiar value to the premises, especially where, as in the present case, it appears that the number of existing retail liquor licenses exceeds the legal quota, thereby preventing the issuance of any new licenses by the Board. Once a property has been fitted and equipped for use as a restaurant, and especially if it has long been operated as such, the removal of the liquor license therefrom undoubtedly depreciates the value of the property. The learned chancellor found as a fact that plaintiffs cannot rent their property for a restaurant if there is no restaurant liquor license. But an exact, or even approximate, measure of the lessors' damages could not be formulated and applied in a suit at law for breach of the lessees' covenant for they are necessarily speculative and indeterminate; under such circum-

stances it is the peculiar province of equity to afford relief. It would indeed be a reproach to our system of jurisprudence if one were allowed deliberately to breach such a covenant as this and the party injured thereby were furnished no adequate means of redress.

The decree of the court below must be amended in one particular. The injunction granted was made *perpetual,* whereas, as already stated, defendants' covenant was merely that they would not attempt *"at any time during the term of this lease"* to remove or transfer the license. The lease will expire by its terms on July 1, 1951. It is true that a later paragraph of the lease was as follows: "It is further expressly understood and agreed that the lessees will not remove from or attempt to remove from the demised premises the restaurant liquor license for said demised premises without the consent of the lessors had in writing during the term of this lease." Plaintiffs argue that the words "during the term of this lease" here refer to the time within which the consent of the lessors must be obtained, not to the time during which defendants agree not to remove the license from the premises. Even conceding, however, that this paragraph is ambiguous in that regard, when it is read in connection with the former clear and explicit agreement not to attempt to remove or transfer the license during the term of the lease it is obvious that the covenant against removal or transfer was expressly intended to apply only to the five year term of the lease; that being so, the injunction to enforce it cannot extend beyond the time thus prescribed. Whether at the expiration of that period the Liquor Control Board will recognize the existence of any then remaining right of defendants to transfer the license is a matter solely for the Board, at that time, to determine.

As modified, the decree is affirmed; each party to bear their own costs.