## Kaelin *v.* University of Pittsburgh, Appellant.

Argued March 23, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

222

[redacted]

*Charles C. Arensberg,* with him *John P. Papuga,* and *Patterson, Crawford, Arensberg & Dunn,* for appellants.

*Donald E. Rohall,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 19, 1966:

Appellee, plaintiff, filed a complaint in mandamus, alleging that, since 1949, he has from time to time enrolled in various courses at the graduate level at the University of Pittsburgh; that he was in the 48-credit program leading ultimately to a Master's Degree in Business Administration; that over the period of years, he had accumulated in excess of the 48 credits; that the school, however, would not allow him credit for some courses which had been completed outside the time limitation period established by the school. Appellee further alleges that in October of 1963, he and appellants' officials held a conference, at which time it was agreed that appellee should be granted his degree if he completed 9 additional credits of work prior to December 31, 1964. Appellee further alleges that he completed the courses with excellent results, and, at that time, appellant repudiated these latest requirements and insisted upon a comprehensive written examination prior to its conferring a Master's Degree in Business Administration upon him. Appellee further avers that appellants' refusal to confer this degree upon him has

put him to an extreme financial disadvantage and that he has no adequate remedy at law. Appellee then prayed for a judgment in mandamus and a jury trial.

Appellant filed preliminary objections to the complaint raising the question of jurisdiction and demurrer and further alleged appellee's failure to join necessary parties. Appellee filed answers to these preliminary objections and, after oral argument, the court made its order on December 27, 1965, which it amended on December 29th, 1965, reading as follows: "And Now, to-wit, this 29th day of December, 1965, after oral argument and consideration of briefs, it is hereby ordered, adjudged and decreed that the preliminary objections in the form of a petition, raising a question of jurisdiction and a demurrer, are dismissed. The preliminary objection, alleging the failure to join a necessary party, is sustained, and the Plaintiff is given 15 days in which to amend the Complaint to include the necessary parties."

It is from this order that this appeal was taken.*

Appellee filed a motion to quash the appeal, arguing that the order appealed from is interlocutory and, hence, not appealable. Appellant contends the appeal is not quashable. This is a correct statement of the law in this instance. We said in *Com. ex rel. Fox v. Swing*, 409 Pa. 241, 243, 186 A. 2d 24 (1962): "As we stated in Strank v. Mercy Hospital of Johnstown, 383 Pa. 54, 57, 117 A. 2d 697 (1955), 'Plaintiff has moved to quash the appeal on the ground that the court's decree was interlocutory and not a final decree from

---

*It should be noted that after this appeal had been taken, appellee filed an amended complaint and appellant again filed preliminary objections to the amended complaint. Appellant answered these preliminary objections to the amended complaint and after argument the court below again filed an order and an opinion on January 20, 1966. We do not consider any of these proceedings since they occurred subsequent to the filing of this appeal.

which an appeal may properly be taken. It is true, of course, that the appeal is not from a final decree, but the very purpose of the Act of 1925 was to permit such an appeal in order that the question of jurisdiction might be preliminarily determined. The motion to quash is overruled.' "

Appellant further contends that the court of common pleas has no jurisdiction or competency to determine controversies of the general class to which the case at bar belongs.

The court below held that the Act of 1893, June 8, P. L. 345, §1, 12 P.S. §1911, specifically gives the court of common pleas jurisdiction in actions of mandamus when a defendant is a corporation having its chief place of business within the county, and that the University of Pittsburgh is a corporation and does have its chief place of business in Allegheny County. In *Witney v. Lebanon City,* 369 Pa. 308, 85 A. 2d 106 (1952), this Court reviewed at some length the question of jurisdiction of subject matter and then enunciated the principles that we have since followed. These principles were concisely summarized again by this court in *Strank v. Mercy Hospital of Johnstown,* 376 Pa. 305, 309, 102 A. 2d 170 (1954), where it was said: ". . . the test for determining whether a court has jurisdiction of the subject matter is the competency of the court to determine controversies of the *general class* to which the case presented for its consideration belongs, and the controlling question is whether the court had power to enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case. It was further held that the Act of 1925 was not concerned with matters going to the right of the plaintiff to recover on his cause of action but only with his right to have his cause of action heard and determined. Again in Upholsterers' International Union of North America v. United Furni-

ture Workers of America, C.I.O., et al., 356 Pa. 469, 473, 52 A. 2d 217, Mr. Justice JONES, speaking for the Court, declared that, '. . . The thing of chief importance on a question of jurisdiction of subject matter is not whether the plaintiff may recover in the particular forum on the cause of action pleaded but whether the court is empowered to hear and determine a controversy of the character involved: . . .'.

"Before this power to enter upon the inquiry can be affirmed to exist, it must initially be made to appear that the law has given the tribunal capacity to entertain the complaint against the person sought to be charged. Jurisdiction of the subject matter is a condition precedent to the acquisition of authority over the parties. It is conferred upon the courts by the Constitution and laws of the Commonwealth.

"In order to ascertain if the court below was empowered by law to entertain jurisdiction of the matter in controversy we must turn to the statutory provisions of the Commonwealth regarding actions of mandamus. The Act of June 8, 1893, P. L. 345, as variously amended, the last amendment being the Act of May 13, 1925, P. L. 664, 12 PS Sec. 1911, provides that, 'The several courts of common pleas shall, within their respective counties, have *the power to issue* writs of mandamus to all officers and magistrates elected or appointed in or for the respective county, or in or for any township, district, or place within such county, and to all corporations being or having their chief place of business within such county and to any corporation doing business or having its property, in whole or in part, within the county: . . .' ". (Emphasis in original). See also *McWilliams v. McCabe,* 406 Pa. 644, 648, 179 A. 2d 222 (1962). The *Strank* case, 376 Pa. 305, and *Barker v. Bryn Mawr College,* 278 Pa. 121, 122 A. 220 (1923), are very similar to the instant case. Appellee attempts to distinguish this case from those by contending that

both Mercy Hospital of Johnstown and Bryn Mawr College were private corporations, and, therefore, as such, mandamus was not the proper remedy; but that appellant receives millions of dollars in state aid. In the *Strank* case, 376 Pa. 305, plaintiff sought credits which the Mercy Hospital of Johnstown refused to give; in the *Bryn Mawr College* case, supra, plaintiff sought to have a student reinstated; in the instant case, appellee seeks a Master's Degree, which the appellant refuses to confer. We believe appellee's distinction as to state aid to be without merit, for in all three cases, the asserted rights arose from a contractual relationship between the student and the institution. As we said in *Strank*, 376 Pa. 305,: " 'The word "jurisdiction" (jus dicere) is a term of large and comprehensive import and embraces every kind of judicial action, and hence every movement by a court is necessarily the exercise of jurisdiction. It includes jurisdiction over the subject matter as well as over the person. *In the sense, however, in which the term ordinarily is used,* jurisdiction may be concisely stated to be the right to adjudicate concerning the subject matter in a given case. . . .': 14 Am. Jur., Courts, §160 (emphasis supplied). In other words the law must make the court competent to entertain the particular controversy. Unless special statutory provisions have changed the rule, the use of mandamus is limited to the enforcement of rights and duties imposed by law, and, if the right or duty rests wholly on contract, the writ will not issue to enforce it: See 55 C.J.S., Mandamus, Sec. 56."

Appellee, in his brief, contends that plaintiff has no available remedy except a writ of mandamus. He contends that an action in assumpsit for breach of contract would be "ridiculous" and that money damages would never be able to compensate appellee for the value of the degree he wishes to have conferred upon himself. He further contends in his brief that because

the University of Pittsburgh receives aid from the Commonwealth, that it is no longer a private institution, and on that basis can be distinguished from the Mercy Hospital of Johnstown and Bryn Mawr College. With these two contentions we cannot agree. We held in *Strank v. Mercy Hospital of Johnstown,* 383 Pa. 54, 57, 117 A. 2d 697 (1955) : "Under the Acts of June 16, 1836, P. L. 784, §13, and February 14, 1857, P. L. 39, the courts of common pleas have the jurisdiction and powers of a court of chancery in all cases such as those in which they had theretofore possessed jurisdiction and powers under the Constitution and laws of the Commonwealth, and also so far as relates to the affording of specific relief when a recovery in damages would be an inadequate remedy. They have jurisdiction not only for the prevention of acts contrary to law and prejudicial to the rights of individuals, but also for the enforcement of obligations whether arising under express contracts, written or oral, or implied contracts, including those in which a duty may have resulted from long recognized and established customs and usages, as in this case, perhaps, between an educational institution and its students. Moreover, it is the peculiar province of equity to afford relief where the measurement of damages in such cases cannot be formulated and applied in a suit at law because of their being necessarily speculative and indeterminate, and therefore the legal remedy is not adequate and complete: H. Daroff & Sons, Inc. v. Vitullo, 350 Pa. 501, 507, 39 A. 2d 595, 598; Ritz v. Rafail, 366 Pa. 274, 276, 277, 77 A. 2d 411, 413. Indeed it might be said that it would be a reproach to our system of jurisprudence if plaintiff should be found entitled to the transfer credits which she seeks, but nevertheless neither law nor equity can furnish her any adequate means of redress."

As to appellee's second contention that the University of Pittsburgh is no longer a private institution, we must again disagree. Many institutions of the Commonwealth receive aid from the Commonwealth and yet are free from control by the Commonwealth. Members of the Board of Trustees of the University are not appointed by the Commonwealth, but rather are elected by the alumni or the Board itself, and they control the administration of the University's affairs through personnel employed by them.

In such circumstances, mandamus will not lie and the complaint must be dismissed.

Order reversed and complaint dismissed.

Mr. Justice ROBERTS concurs in the result.

CONCURRING OPINION BY MR. JUSTICE COHEN:

I concur in the result only because *Strank v. Mercy Hospital of Johnstown,* 376 Pa. 305, 102 A. 2d 170 (1954), 383 Pa. 54, 117 A. 2d 697 (1955), indicates that the jurisdiction of the court of common pleas in situations such as this is exercisable in equity.