## Speck v. Baker

*C. D. Spitler*, for plaintiff.
*James T. Reilly*, for defendant.

ADJUDICATION

MEYER, J., April 29, 1968.—Plaintiff filed a complaint in equity in which she asked the court to preliminarily and then permanently enjoin defendant from transferring and selling the restaurant liquor license issued for the premises at Bordnersville, Union Township, Lebanon County, Pa., known as Speck's Cafe, to any other person or to any other location without the consent of plaintiff, and for such further relief as the court may deem appropriate.

Thereafter, on ·December 29, 1967, this court, on stipulation of counsel for the parties, granted a preliminary injunction until the case was disposed of on

the merits upon security being entered by plaintiff in the sum of $3,000.

Defendant filed his answer to the complaint containing new matter, and plaintiff filed a reply to the new matter.

The issue before the court is whether or not defendant is bound by a covenant in the lease originally entered into between Ralph E. Speck, deceased huband of plaintiff Florence M. Speck, and Florence M. Speck as lessors, and Benjamin F. Polm as lessee, and which covenant provides that the lessee shall not, inter alia, transfer the restaurant liquor license from the demised premises to any other location under any condition.

The lease was assigned by Polm to one Schreckengost who in turn assigned it to defendant Baker.

This lease also provides that it was to be renewed automatically for a term of 5 years unless 90 days' notice was given by either lessor or lessee of intention to terminate; that if the lessee terminated the lease he had to signify the fact that he was selling his business and transferring the restaurant liquor license to a bona fide purchaser, financially and morally responsible for the continuance and performance of the lease and all of its covenants; that the existence of the liquor license was a substantial and inherent factor in the present value of the premises; that the interior of the demised premises was to be kept in repair at the expense of the lessee; and that the lessee was to furnish security in the form of a note in the amount of $2,000 guaranteeing the performance of the covenants to pay rent and all other covenants and conditions in the lease. . . .

Defendant seeks to escape the provision in the lease which prohibits the lessee from transferring the restaurant liquor license to another location.

He has asked the court to adopt as a conclusion of law that the lease violated the Landlord and Tenant

Act of April 6, 1951, P. L. 69, and particularly art. II, sec. 203, 68 PS §250.203.

His reasoning is that the lease is invalid because the assignment was not signed by him and the lease was for a term of more than three years.

The Landlord and Tenant Act is derived from the Statute of Frauds, Act of March 21, 1772, sec. 1, 1 Sm. L. 389, 33 PS §1.

The cases under the latter act hold that an assignment which was signed by the assignor was not ineffective because of the Statute of Frauds for the reason it was not signed by the assignee since the Statute of Frauds requires only the party assigning the lease to execute the assignment: Nigro v. Don-Mar Corporation, 369 Pa. 35, 85 A.2d 21.

The assignor, Schreckengost, had made an assignment of his lease. Baker denied having signed the assignment.

However, Baker took possession of the premises, paid the rent, represented to the Liquor Control Board that he was the assignee of the lessee, and that his lease expired January 31, 1968.

It is our opinion that the Liquor Control Board saw such an assignment executed by Schreckengost or it made a mistake in transferring the license to defendant without his having first secured a satisfactory lease arrangement.

In either event defendant cannot now seek shelter under the Landlord and Tenant Act or the Statute of Frauds.

Baker's knowledge of the lease and the terms contained in it is confirmed by the notice which he gave to Mrs. Speck on October 10, 1967, in which he said,

"This is to advise you that on or before January 31, 1968, I intend to vacate the property which you have been leasing to me as successor to Robert E. Schreckengost, who in turn succeeded to the interest

of Benjamin F. Polm in a leasing agreement, entered into between you and your husband and Mr. Polm, in April, 1952.

"Jan. 31, 1968, will be the end of the second five-year extension of the original lease, which requires ninety days' notice of termination by either party".

We cannot accept as truthful Baker's statement that he was not aware of the contents of the lease, because of this letter and for the further reason that he had been an employe of Polm for several years. He participated with Schreckengost in Schreckengost's purchase from Polm. He became the sole owner after purchase from Schrenckengost of the business by paying a valuable consideration for it. It is reasonable to suppose that he was careful enough to inform himself on all the terms of the lease if he did not already know about them.

We cannot grant defendant's request to adopt the conclusion of law that the lease violated the Landlord and Tenant Act.

The second conclusion of law which defendant requests the court to make is that the lessor waived all the provisions of the lease.

His argument as to this conclusion of law is that because Mrs. Speck undertook to make some of the repairs on the interior, did not require the security of a $2,000 note; made no complaint that a written notice was not given of intent to assign the contract by Mr. Polm to Mr. Schreckengost or from Schreckengost to Baker; and made no objection that no notice was given of the renewal of the lease as required in the lease; that she has waived all the provisions of the lease.

It is true that Mrs. Speck did make some interior repairs. She also made no objection to the failure to comply with the requirement to give written notice of the assignment of the lease from Mr. Polm to Mr.

Schreckengost or from Mr. Schreckengost to Mr. Baker.

We do not feel that by waiving these provisions that she waived all of the terms of the lease.

There were sound reasons why Mrs. Speck would waive some of the formalities required by the lease. Baker was an employe of Mr. Polm, he continued to work for Mr. Schreckengost, and Mrs. Speck was satisfied to have him as a tenant and accepted his rent.

As to the objection that notice was not given of the renewal as required in the lease, we find no such requirement. As we read the lease, a lawful continuance of the tenancy beyond the term renewed the lease automatically. The lease terminated only if the lessors or the lessee gave written notice of the intention to do so no less than three months before the expiration of the then current term.

Defendant admits that it is well settled that the landlord may waive any substantial provision in the lease and correctly cites as authority for this proposition Haines v. Elfman, 235 Pa. 341, 84 Atl. 349 (1912). This case holds that a modification of a lease may be made without varying other conditions.

Defendant incorrectly assumes, however, that the landlord waived all the provisions of the lease. It is clear that she did not waive the provision for the payment of rent. She did not ignore the provisions with reference to transfer.

The request for the adoption of the conclusion of law that lessor waived all the provisions of the lease must be denied.

The third conclusion of law which defendant proposes that the court should adopt is that the premises in question were "untenable" (sic). We believe defendant means untenantable.

There was testimony that there had been trouble with the water supply but there was no testimony that

the license for the premises would not be renewed by the Liquor Control Board.

Defendant, in his notice to the landlord, did not assign as a reason for terminating the lease that the premises were untenantable.

If the premises were untenantable he would not have had to wait until January 31, 1968, to vacate.

Under the lease it was lessee's obligation to keep the interior of the property in repair. The fact that plaintiff, on occasion, had contributed toward and had made interior repairs is not proof that she waived the obligation of the tenant to keep the interior of the property in repair.

It appears from the testimony that some of the more desirable features in a bar were not present in the premises owned by plaintiff. It is doubtful, however, that any tenant paying $75 a month rental could expect to have marble floors, mirrored walls, or any of the other features found in famous rooms such as the Pump Room. It is doubted, too, that the clientele of Speck's Cafe would have appreciated such niceties.

The testimony does not support a conclusion of law that the premises were untenantable.

The fourth conclusion of law which defendant requests the court to adopt is that the lease, if binding on defendant, created an involuntary servitude because the lessee could never release himself from the contract.

Courts in equity will enforce a covenant not to transfer a liquor license: Ritz v. Rafail, 366 Pa. 274 (1951). In this case there was the covenant not to transfer nor attempt to transfer the license at any time during the term of the lease, and the court found that at the expiration of the term the lessee was at liberty to transfer the license.

Plaintiff's lease provides, "Any such substitution shall be completed at least 75 days before the expira-

tion of the current restaurant liquor license and the lessee further agrees that any restaurant liquor license in connection with the above premises to be held by lessee herein will not be assignable or tranferrable to any new location under any conditions, it being mutually understood that the existence of any liquor license on said premises is a substantial and inherent factor in the value of the premises above described".

An agreement not to transfer the license to any new location under any conditions is considerably different than an agreement not to transfer during the term of the lease.

The fifth conclusion of law which defendant seeks to have the court adopt is that a permanent injunction should not issue.

His reasoning is that the implication throughout the contract is that the conditions in the lease apply only for the term of the contract of five years or any renewal. He cites Thompson v. Gorman, 366 Pa. 242, 77 A.2d 411 (1951). This case holds that the evidence did not establish that the defendant was operating his automobile in violation of the statutes and ordinances relating to speed. We believe that the defendant intended to refer to the case of Ritz v. Rafail, supra.

What we have said before about the holding in that case is equally applicable here because in Ritz the lease provided that the license should not be removed at any time during the term of the lease.

Since plaintiff's lease provides that the restaurant liquor license should not be transferred to another property under any conditions, defendant is bound not to transfer.

It was also held in Ritz that a liquor license is a property right and that once a property has been fitted and equipped for such use, the removal of the liquor license therefrom undoubtedly depreciates the value of the property, and that it would be a reproach to our

jurisprudence if one were allowed to deliberately breach a covenant not to transfer a license, and leave the party injured without adequate means of redress.

Defendant has an unusual theory that an involuntary servitude has been created. We have always been under the impression that the term involuntary servitude is used in referring to the Thirteenth Amendment to the Federal Constitution and that it has to do with some sort of personal condition of bondage which is against the will of the party. The lease can, under no stretch of the imagination, be construed to mean that lessee is held in bondage. Defendant probably means that the consideration is illegal and that an order preventing him from transferring the license to another location would be in derogation of his rights.

Our courts have said that an agreement not to transfer a restaurant liquor license to another property is not against public policy: Procopio v. Staskiel, 70 D. & C. 252 (1949); DiPietro v. Cichilli, 38 D. & C. 404; Guzzi v. Czaja, 163 Pa. Superior Ct. 597.

The sixth and last conclusion of law which defendant had suggested the court adopt is that plaintiff has been guilty of laches in enforcing her equitable right. Plaintiff was not guilty of laches.

When defendant gave notice on October 10, 1967, to plaintiff of his intention to terminate his lease at the end of the term, he had already entered into an agreement to purchase a motel to which motel he intended to transfer his liquor license. When he gave the notice he did not tell plaintiff that he intended to transfer his liquor license to another property. It is true that he said he intended to vacate the property, but he could have been selling the business to someone else, leaving the purchaser to negotiate a suitable lease.

The action in equity was commenced on December 19th. A two months' delay in commencing an action in

equity would not convict plaintiff under these circumstances of laches.

At the time this action was commenced defendant had not completed his purchase of the motel and he was in no worse position than he was on October 10th when he gave notice.

Equity demands good faith and reasonable diligence. Applying the doctrine is for the purpose of preventing an injustice brought about by a number of causes. There isn't a single cause which defendant has advanced for the application of the doctrine.

### Conclusions of Law

1. The lease agreement dated April 1, 1952, is a valid contract and both plaintiff and defendant are bound thereby.

2. The covenant not to transfer the license to another property is valid and enforceable in equity.

3. Plaintiff has not waived all the provisions of the lease.

4. Plaintiff is not barred by laches.

5. Plaintiff will suffer irreparable damage for which there is no adequate remedy at law unless relief is granted.

6. In the absence of proof of loss no damages can be awarded.

7. Defendant must be enjoined from transferring the restaurant liquor license to another property.

### Decree Nisi

And now, to wit, April 29, 1968, defendant is enjoined from transferring the restaurant liquor license which he now holds from the premises known as Speck's Cafe, (1) To any other person without first securing the approval of plaintiff, which approval shall not be unreasonably withheld, (2) to any other location or property.