## Eter v. College Misericordia

*Patrick J. Flannery,* for plaintiff.
*Donald H. Brobst,* for defendants.

TOOLE, *J.*, February 19, 1982 — We have before us for determination preliminary objections in the nature of a demurrer which essentially question the right of the court to interfere with a private college's academic evaluation and dismissal of a student.

In considering and resolving the demurrer before us, we are required to comply with the standards set forth in Gekas v. Shapp, 469 Pa. 1, 364 A.2d 691 (1976), wherein the court stated:

"The standards for sustaining preliminary objections in the nature of a demurrer are quite strict. A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonable deductible therefrom, but not conclusions of law (citations omitted). In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. (citations omitted.) If there is any doubt, this should be resolved in favor of overruling the demurrer. Clevenstein v. Rizzuto, 439 Pa. 397, 266 A.2d 623 (1970)."

Examining the complaint which consists of 24 paragraphs in the light of Gekas, we find the following facts:

Plaintiff, Marie Eter, during the spring of 1979, applied for and was granted admission to College Misericordia School of Nursing. That spring, she enrolled in a course known as Nursing 102. She apparently completed Nursing 102 with a "B" average and entered the fall semester of 1979 enrolling in a course known as Nursing 4, Maternity and Pediatrics. She received a passing grade, which was revoked by her clinical instructor in Pediatrics in late December of 1979. She was then given a failing grade for Nursing 4.

Plaintiff appealed the revocation of the passing grade to the Department of Nursing and the Admissions, Promotion and Graduation Committee (A.P.R.G. Committee). The committee permitted plaintiff to undergo another evaluation in Pediatrics only to be done by another instructor, and based on a three hour observation of the plaintiff's clinical procedures. Plaintiff failed the second evaluation, but according to plaintiff, the evaluation was given not on the stated objectives of the course in Pediatrics, but on the stated objectives of a different nursing course.

In January of 1980, plaintiff again appealed the evaluation to the A.P.R.G. committee, and the committee voted to pass her in the course. Thereafter, she continued her course in nursing enrolling in a course known as Nursing 3, Medical and Surgical Aspects of Nursing. On the day she entered Nursing 3, plaintiff received formal notice that she had passed Nursing 4.

In July of 1980, plaintiff was notified that she would be required to submit to a re-evaluation in Pediatrics as there was no documented record of her receiving a passing grade in the Pediatrics course. In addition, the complaint alleges that M. Bernadette Hogan informed plaintiff that she was "old and different" and, therefore, was not an appropriate person for nursing.

In September of 1980, plaintiff was required to take a general pharmacology examination, allegedly a test not given to any other students in the course, nor a part of the objective of the course. Plaintiff failed the examination and was dismissed from College Misericordia School of Nursing.

In February of 1981, plaintiff applied to the New York State Board of Nursing to take an examination to become a licensed practical nurse in New York,

and submitted the application to defendant, M. Bernadette Hogan, who refused to acknowledge the application and thereby prevented plaintiff from taking the examination.

Plaintiff alleges that the actions of College Misericordia and M. Bernadette Hogan in dismissing her from the nursing program were arbitrary, capricious and in bad faith, and that as a result of these actions, plaintiff sustained ridicule, embarrassment, discomfort, economic loss, insomnia, depression, anxiety, and incurred various medical expenses.

While plaintiff's complaint is designated as a trespass action, it is difficult to determine with any precision the exact theory of liability upon which the complaint is based. In her brief and at argument, plaintiff referred to numerous theories to support her alleged cause of action. We will consider all the arguments and authorities offered to us by the plaintiff in opposition to the demurrer now before us for resolution.

First, plaintiff cites 15A Am. Jur. 2d Colleges and Universities §26 as authority for the proposition that upon payment of the required tuition fee, a contract is created between the student and the college. This contract contains two implied conditions: (1) that no student shall be arbitrarily expelled or dismissed from the college, and (2) that the student will submit herself to reasonable rules and regulations. The case of Dixon v. Alabama State Board of Education, 294 F.2d 150 (5 Cir. 1961), cert. denied 1961, 368 U.S. 930, 7 L.Ed. 193, 82 Sup. Ct. 368 is also cited as being in accord with the statement in Am. Jur.

Dixon involved a suit by former students at a state supported college seeking injunctive relief against a State Board of Education and others from obstructing their right to attend college. In that case, the

court held that due process requires notice and some opportunity for hearing before a student at a tax-supported college can be expelled for misconduct. In Dixon, the District Court had ruled that courts have consistently upheld the validity of regulations that have the effect of reserving to the college the right to dismiss students at any time for any reason, without divulging its reason other than it being for the general benefit of the institution. The Supreme Court, in reversing, noted that the District Court mistakenly relied on Anthony v. Syracuse University, 224 App. Div. 487, 231 N.Y.S. 435 stating:

"This case [Anthony], however, concerns a private University and follows the well settled rule that the relations between a student and a private University are a matter of contract."

The section in Am. Jur. and the Anthony case mentioned in the Dixon decision merely establish the creation of a contract upon payment of tuition. The instant complaint is filed solely in trespass and therefore a discussion concerning any of the contractual rights and/or remedies accruing to this plaintiff is foreclosed. We express no opinion as to what, if any, contractual rights or remedies exist in the instant matter.

Plaintiff next argues that there is no doubt that she can maintain a mandamus action if the actions of the college in dismissing her were arbitrary and capricious. This categorical statement again fails to consider or appreciate the significant distinction between state colleges and universities and their private counterparts.

In Kaelin v. Univ. of Pittsburgh, 421 Pa. 220, 218 A.2d 798 (1966), the Pa. Supreme Court specifically held that a court of common pleas does not have jurisdiction to issue a writ of mandamus against a

nonprofit corporation, even though it receives substantial state aid, in order to enforce a right of contract between the plaintiff and the corporation. (See also Barker v. Bryn Mawr College, 278 Pa. 121, 122 A.220 (1923)).

Plaintiff's next contention is that "our federal courts have recognized that a student has the protection of the 14th Amendment to be free from arbitrary and capricious conduct of a college or university", citing as authority the seminal case of Board of Curators of the University of Missouri et al. v. Horowitz, 98 Sup. Ct. 948, 435 U.S. 78, 55 L.Ed. 2d 124 (1978). It is also suggested in plaintiff's brief that the Horowitz case establishes a duty on the part of a college or university not to act arbitrarily or capriciously and that the conduct of the defendants in this case constituted a breach of that duty for which breach plaintiff can recover monetary damages.

In Horowitz, a former medical student brought suit challenging her dismissal from a medical college of a public university. The suit was instituted under 42 U.S.C. §1983 alleging constitutional violations, to wit, that the medical school had not accorded her procedural due process prior to her dismissal. The U.S. Supreme Court was called upon to decide what procedures must be accorded to a student at a state educational institution whose dismissal may constitute a deprivation of "liberty" or "property" within the meaning of the 14th Amendment. In resolving the issue, the Supreme Court stated: (p. 952)

"We need not decide, however, whether respondent's dismissal deprived her of a liberty interest in pursuing a medical career. Nor need we decide whether respondent's dismissal infringed any other interest constitutionally protected against depriva-

tion without procedural due process. Assuming the existence of a liberty or property interest, respondent has been awarded at least as much due process as the 14th Amendment requires. The school fully informed respondent of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment. The ultimate decision to dismiss respondent was careful and deliberate. These procedures were sufficient under the Due Process Clause of the 14th Amendment.

The court emphasized the significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct. "This difference calls for far less stringent procedural requirements in the case of an academic dismissal." (Id. at 953)

In further outlining the important public policy considerations weighing against court involvement in academic evaluation, the Supreme Court stated (p. 955):

"Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adopted to the procedural tools of judicial or administrative decision making. . . . We decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing. . . . We decline to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship."

The holding in Horowitz is relevant to the instant matter for two reasons:

1. That case involved a claim under 42 U.S.C.

§1983. This statute[1] specifically requires that alleged constitutional violations must be effected through state action. There is no such allegation in the instant complaint. Furthermore, actions of private educational institutions do not constitute state actions for the purpose of the 14th Amendment. Penndrell v. Chatham, 370 F. Supp. 494 (W.D. Pa. 1974).

2. It cannot be overemphasized that assuming state action, the court's only involvement in an academic dismissal would be a very circumscribed review of the procedural mechanism employed by the college or university.

It is important to note that plaintiff's complaint reveals that she was afforded at least two separate appeals to the Department of Nursing and Admissions, Promotion and Graduation Committee. Again, assuming College Misericordia to be a state university, this court would be hard pressed based on the standard set forth in Horowitz to conclude that the academic dismissal procedure was in any way deficient. In fact, the Horowitz decision indicates that academic deficiency dismissals necessitate little, if any, review before the university decision-making body.

In Brookins v. Bonnell, 362 F. Supp. 379 (E.D. Pa. 1973), a nursing student who had been expelled from a Community College because of disciplinary misconduct sought a preliminary injunction for immediate reinstatement. The District Court there declared (p. 382):

1. Because neither the deprivation provision of the Civil Rights Act of 1871, nor its jurisdictional counterpart vests exclusive jurisdiction over Civil Rights cases in Federal Court, a grant of concurrent jurisdiction in State Court is presumed. Rzeznik v. Chief of Police of Southampton, 374 Ma. 475, 373 N.E. 2d 1128 (1978).

"If the student was actually expelled for reasons other than the quality of his work or if the student failed because of bad faith or arbitrary and capricious action by an instructor, the Courts will order the granting of a fair and impartial hearing."

In its decision, the court also pointed out that a student attending a public college dismissed solely because of academic failure is not entitled to a hearing.

As should be obvious by now, the "remedy" accorded by the courts has been procedural, not monetary. In Pennsylvania, the Supreme Court has held that where a student nurse was expelled from a hospital nursing school for infraction of the rules and sought to have the school give her transfer credits for work completed, an action which was based partly on contract and partly on a duty resulting from long recognized and established customs and usages was within the peculiar province of equity since there was no legal remedy. (Strank v. Mercy Hospital of Johnstown, 383 Pa. 54, 117 A.2d 697 (1955).)

Plaintiff cites the case of Sorrells v. Matthews, 129 Ga. 319, 58 S.E. 819 (1907) as authority for the proposition that improper expulsion constitutes an actionable tort and thus damages are appropriate. Sorrels involved an action brought against a public school teacher for damages in the sum of $300 for expelling plaintiff's children from school. The court held that the father could not maintain an action absent certain limited circumstances not relevant to the instant matter. In dicta, the Court suggested that if a right of action existed at all, it was in the children, not the father. The Sorrells court discussed Board of Education of Cartersville v. Purse, 101 Ga. 422, 28 S.E. 896 (1897) which held that a child would have a right against an individual who

wantonly and maliciously deprived him of a benefit secured to him by the law. To state the facts and conclusions of the Sorrells court is to distinguish it from the instant matter.[2]

Even though we hold that as a matter of law no damages are recoverable under the facts alleged, we will, nevertheless, address plaintiff's contention that she should be compensated for the intentional infliction of emotional distress.

The complaint alleges that defendant, M. Bernadette Hogan, referred to plaintiff as "old and different" and refused to acknowledge an application of plaintiff to the New York State Board of Nursing (Complaint, Par. 17). In her brief, plaintiff contends that whether such conduct amounts to intentional infliction of emotional distress is a factual question. We disagree.

In Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa. Super 377, 368 A.2d 770 (1976), the court stated that any inquiry concerning this tort must begin with a reference to the Restatement (Second) of Torts §46 (1965):

---

2. The only case this court has been able to find awarding damages in a dismissal situation is Carey v. Piphus, 98 Sup. Ct. 1042, 435 U.S. 247, 55 L.Ed.2d 252 (1978). That case was instituted under 42 U.S.C. 1983 by students who were suspended from public, elementary and secondary schools without procedural due process. The dismissals were due to misconduct. In that case, the Supreme Court held that the mental and emotional distress caused by denial of procedural due process itself is compensable under the Civil Rights Act of 1971, but neither the likelihood of such injury, nor the difficulty of proving it is so great as to award compensatory damages without proof that such injury actually was caused. The court further stated that the denial of procedural due process in a disciplinary dismissal should be actionable for nominal damages without proof of actual injury. 42 U.S.C. §1983; Const. Amend. 14.

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

The Jones Court referred to and approved Comment D to section 46 in enumerating the elements of this tort (p. 772):

"Liability has been found only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" (Emphasis supplied.)

An examination of plaintiff's complaint discloses no allegation that the conduct of the defendants was extreme and outrageous. We will simply say that we find as a matter of law that the alleged conduct of the defendants in the instant case does not even begin to approach the threshold which must be attained and alleged in order for a plaintiff to withstand an objection in the nature of a demurrer. It is apparent, therefore, that plaintiff has failed to plead all the elements of her case by the proper standard. Jones, 368 A.2d at 774.

In a final attempt to find any substantive law which would afford the desired relief under the instant facts, the plaintiff argues that the defendants have "interfered with prospective advantage". This tort is defined in Restaurant (Second) of Torts, §870 as Liability for Intended Consequences:

"One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed, although the actor's conduct does not come within the traditional category of tort liability."

Suffice it to say no Pennsylvania appellate case has been cited specifically recognizing the tort of liability for intended consequences and we see no factual or legal basis for us to now do so.

After a review of the complaint and applicable case law, this court is satisfied that defendant's demurrer must be sustained.

To thrust ourselves into the process of academic evaluation would not only be dubious, unwise and totally unwarranted under the facts of this case, but it would also require us to ignore decisions of the last 50 years in both the state and federal courts which have been consistent in their refusal to disturb academic decisions. We are not so inclined and, accordingly, enter the following.

### ORDER

It is hereby ordered, adjudged and decreed that defendants', College Misericordia and M. Bernadette Hogan, preliminary objection is sustained.