DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI
This case involves an appeal by the Board of School Directors (Board) of the Susquehanna Township School District (School District) from a mandamus order of the Court of Common Pleas of Dauphin County (trial court) directing the Board to reinstate Dr. Susan Kegerise (Dr. Kegerise) as Superintendent of the School District because she had been illegally removed from office. I respectfully dissent *941 because Dr. Kegerise was not removed but resigned, and mandamus does not lie to determine whether the School District properly determined that the actions she took constituted a resignation within the meaning of her employment contract with the School District.
I.
Dr. Kegerise’s contract as Superintendent of the School District expired in June 2017 and included separate termination and resignation clauses. Section 8.03, pertaining to resignation, provided:
8.03 RESIGNATION.[1] In the event that Superintendent seeks to resign or separate her employment with Board for any reason other than death, illness, or disability, Superintendent shall give District at least sixty (60) days’ written notice in advance of the employment severance date. The failure of Superintendent to give such required notice shall cause Superintendent to lose any entitlement to any unused but accrued payments that may be offered pursuant to the fringe benefits under this AGREEMENT, No notice whatsoever shall be required by the Superintendent should her resignation be caused by the Board’s breach of this AGREEMENT or caused by constructive termination by the Board or any of its members. ■Resignation shall not jeopardize any benefits earned prior to the Superintendent’s resignation.
(Reproduced Record (R.R.) at 133a). (emphasis added).
The facts that led up to the Board concluding that she had resigned under this provision began on March 24, 2014, when Dr. Kegerise informed the School District that she needed to take medical leave per a physician’s recommendation from March 14, 2014, through April 21, 2014, due to stress from her employment. Her physician later advised her to extend her medical leave indefinitely and the School District was notified.
Dr. Kegerise then had her legal counsel send several letters to the School District stating that she had been constructively discharged. In response, the School District’s solicitor- sent a letter on April 16, 2014, to Dr. Kegerise’s counsel addressing her employment status. Specifically, the School District solicitor’s letter asserted that, although Dr. Kegerise’s counsel indicated in previous letters that “Dr. Kegerise has been[1] constructively terminated,” she had not, stating:
Dr, Kegerise is and remains the Superintendent of Schools at [the School District] pursuant to the contract between her and the Board. Her recent absence from work was based on a physician’s note received from Dr. Kegerise. Her time away from the [School] District since that day has been recorded as sick leave derived from Dr. Kegerise’s preexisting sick leave accumulation.
On April 10, 2014, Dr. Kegerise filed a report for workers[’] compensation benefits. That report has been forwarded to the [School] District’s Workers[’] compensation carrier and will be processed in the normal course of business. Her application will be either granted or denied following an investigation by the workers[’] compensation carrier. Accordingly, the determination of whether or not Dr. Kegerise suffered a work-related injury will depend on the outcome of this process.
[[Image here]]
Finally, the District understands that Dr: Kegerise’s current physician’s note indicates ■ that she is precluded from *942 working until April 21, 2014. If she is cleared to return to work, then the [School] District hopes and expects her to return to her duties, as Superintendent. If she is not, the [School] District will continue to debit her sick leave time and continue to process her workers!’] compensation claim.
(Id. at 71a-72a) (emphasis added).
The next day, on April 17, 2014, Dr. Kegerise filed a civil complaint (federal complaint) against the School District and Carol L. Karl (Ms. Karl), Jesse Rawls (Mr. Rawls),[2] and Mark Y. Sussman (Mr. Suss-man),[3] all elected members of the Board, in the United , States District Court for the Middle District of Pennsylvania, alleging, inter alia, constructive termination of her employment.[4] As part of the federal complaint, Dr. Kegerise signed a. verification dated April 10, 2014, affirming that the statements contained in her federal complaint were true and correct to the best of her knowledge.
In the federal complaint, Dr. Kegerise alleged, among other things, that the School District constructively terminated her employment. She sought damages in excess of six million dollars, including compensatory and economic damages “for loss of contractual salary and other emoluments of employment,”, consequential damages for “damage to professional reputation and loss of future salary as an educational administrator,” punitive or exemplary damages, attorneys’ fees and other relief. (Id. at 93a.)
On April 21, 2014, the Board accepted Dr. Kegerise’s resignation per Section 8.03 of her Superintendent’s contract pertaining to resignation because of her repeated assertions that she was constructively discharged, including those filed under oath in her federal complaint.
II.
The central issue on appeal is whether Dr. Kegerise’s filing of the federal complaint was a resignation from her position with the School District as envisioned by Section 8.03 of her Superintendent’s contract, thereby precluding mandamus relief.
A.
Constructive discharge occurs only when an employer knowingly permits conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign. Raya and Haig Hair Salon v. Pennsylvania Human Relations Commission, 915 A.2d 728, 733 (Pa. Cmwlth.2007) (citation omitted). In determining what that term “constructive discharge” means within the meaning of Dr. Kegerise’s federal complaint, in Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004), the United States Supreme Court found that for a plaintiff to establish “constructive *943 discharge,” the plaintiff “must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response.” Id. at 134, 124 S.Ct. 2342. The Court added that under this doctrine, “an employee’s reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes.” Id. at 141, 124 S.Ct. 2342. The Court concluded that:
Unlike an actual termination, which is always effected through an official act of the company, a constructive discharge need not be. A constructive discharge involves both an employee’s decision to leave and precipitating conduct: The former involves no official action; the latter, like a harassment claim without any constructive discharge assertion, may or may not involve official action.
Id at 148, 124 S.Ct. 2342 (emphasis added).
Pennsylvania federal courts have also maintained that an employee’s constructive discharge is predicated on the employee’s resignation. See McCarthy v. Darman, 372 Fed.Appx. 346, 349 (3d Cir.2010) (refusing to recognize an employee’s constructive discharge , claim arising from the employee’s suspension because the employee did not actually resign on the date of suspension); McWilliams v. Western Pennsylvania Hospital, 717 F.Supp. 351, 355-56 (W.D.Pa.1989) (holding that “there must be at least some relation between the occurrence of the discriminatory conduct and the employee’s resignation” in a constructive discharge claim).
IB.
Dr. Kegerise filed her federal complaint on April 17, 2014, one day after her attorney received a letter specifically denying that she had been constructively terminated, confirming that she remained the School District’s Superintendent and reiterating that the School District “hope[d] and expect[ed] her to return to her duties as Superintendent” once she was no longer on sick leave. (R.R. at 72a.) However, in her federal complaint, Dr. Kegerise maintained that she was constructively terminated due to intolerable working conditions. She also requested damages for loss of contractual salary, including future salary, thereby acknowledging that her employment ended before the Board passed the motion to accept her “resignation.”
The term “constructive termination” was used in Dr. Kegerise’s 2013 contract, specifically under Section 8.03’s Resignation provision,' and stated, in pertinent part: “No notice ... shall be required by the Superintendent should her resignation be caused by ... constructive termination by the Board or any of its members.” (Id. at 133a.) Dr. Kegerise testified that she understood “constructive termination” to essentially mean that the working conditions might become so intolerable due to the Board’s actions that she would be forced to resign. She testified that the term “constructive termination” used in her 2013 contract had the same meaning as the “constructive termination” term she used in her federal complaint. Moreover, Dr. Kegerise signed the verification on the federal complaint on April 10, 2014, before receiving the School District .solicitor’s letter and before the Board’s vote, stipulating that she stood behind all of the averments made in the federal complaint, thereby indicating that the use of the term “constructive termination” was, in essence, her resignation.
Dr. Kegerise exercised her right to resign under Section 8.03 of the Contract. Dr. Kegerise alleged intolerable working conditions, including harassing conduct by Board members causing her to be unable to satisfy her duties as Superintendent and *944 possibly causing her health issues. She is the one that has the right to exercise the right'to resign under this provision, and she was the one that asked that it be included in the contract. Whether the School Board thinks she has been constructively terminated is irrelevant because this provision gave her the right to resign with the ability to make a claim for contractual damages which she would be unable to do if she just resigned. Dr. Keg-erise would not have been able to make out. a claim that she had been, constructively terminated if she had not effectively resigned, as constructive termination is predicated on the employee’s resignation.
While I would hold that no reasonable person could find that she did not effectively resign, if that matter is in dispute, mandamus would still not lie because it is not available to resolve a contract dispute. Kaelin v. University of Pittsburgh, 421 Pa. 220, 218 A.2d 798 (1966); Shrank v, Mercy Hospital of Johnstown, 383 Pa. 54, 117 A.2d 697 (1955).
III.
The majority does not accept this analysis simply by finding that the School District removed Dr, Kegerise from her position, rather than that she had resigned from her position when she exercised her right to “resign” under Section 8.03 by claiming constructive discharge. In arriving at this position, the majority adopts the “this just can’t be” rationale by stating that: ■
It would be inexplicable to hold that the School Board is authorized to act as if Dr. Kegerise resigned voluntarily when she alleged that it created circumstances that compelled an involuntary resignation. As the trial court aptly noted, “the General Assembly provided a very limited methodology for removing superintendents and assistant superintendents in order to insulate them from arbitrary and capricious activities of the School Board and its individual members.” (Trial court op. at 4.) To endorse the School Board’s argument would essentially authorize a school board to create a condition that would constitute a termination as a matter of law, i.e., intolerable working conditions that would compel a reasonable person to resign, but permit it to proceed as if an employee executed a voluntary resignation. The School Board’s assertion would thwart the General Assembly’s deliberate removal procedure for superintendents and, therefore, must fail. Accordingly, the School Board’s argument that Dr. Kegerise’s filing of a federal complaint alleging constructive discharge constituted a resignation is unpersuasive.
(Majority Opinion at 935.)
While the majority claims that this is inexplicable, this “can be” because the parties agreed to it in Section 8.03 of the contract. Moreover, this in no way “thwart[s] the General Assembly’s deliberate removal procedure,” Majority Opinion at 7, because there is nothing in the School Code that limits how a school superintendent can exercise his or her right to resign. In this case, that is set out in Section 8.03 of Dr. Kegerise’s contract, which specifically deals with resignation caused by constructive discharge.
Section 8.03 gave Dr. Kegerise the option to resign without advance notice by claiming constructive discharge, presumably with the remedy that she took—filing an action that claims 6 million dollars in damages; She exercised that option and nothing the School District did indicated that it had any intent to remove her as Superintendent. In fact, she exercised that option after the School District informed her that she had not been constructively discharged and that “the [School] District hopes and expects her to return to her duties as Superintendent” after her *945 stress-related medical issues were resolved.[5] (R.R. at 72a.)
I recognize that being a school superintendent is a difficult job subject to stress *946 from parents, teachers and, yes, from members of the school board who attempt to interfere with the day-to-day operation of schools. But as the majority points out, a school superintendent can only be removed in limited circumstances. Being a member of a school' board, though, is also difficult. Unpaid, the school board is required to spend an enormous amount of time and be subject to enormous stress attempting to address concerns of parents and the people that elected them, other Board members who may not agree with their position, and, yes, from the school superintendent, who may not agree with the school board or one of its member’s positions.
If a school superintendent has conflict with a school board, a school superintendent can either resign or attempt to accommodate those elected officials and stay on suffering from what he or she considers ill-conceived positions or the ill-tempered conduct of some members of the school board, knowing that he or she can only be removed before his or her contract is up only for narrow statutorily defined reasons. Moreover, if a school superintendent is being precluded from pursuing his or her statutory duties by a school board, then he or she can bring an action in mandamus to stop the school board from doing so. Pittenger v. Union Area School Board, 24 Pa.Cmwlth. 442, 356 A.2d 866 (1976). Or, as here, Dr. Kegerise can avoid that purported stress and conflict by exercising her contractual option and say “enough is enough” to the Board—“you have caused me so much stress that I am no longer capable of performing my job and I resign and I vyill sue you for damages.” Dr. Kegerise, by the terms of her contract, has to pick an option—stay and tough it out or, as here, resign and sue— but not both.
Once she elected to resign and sue, the Board acted within its discretion to accept that decision and mandamus does not lie.

. The 2013 contract newly added this provision.

. Mr. Rawls was President of the Board from December 2011 to December 2012.

. In November 2013, Mr, Rawls and Mr. ' Sussman filed a civil complaint in the United States District Court for the Middle District of Pennsylvania against the Board, the School District and Dr. Kegerise to enjoin them from violating'Mr. Rawls’s and Mr. Sussman’s constitutional rights and to nullify the employment contract between the Board and Dr. Kegerise. On January 21, 2014, Mr. Rawls and Mr. Sussman amended their complaint, naming only Dr. Kegerise as the defendant. In March 2014, Mr. Rawls and Mr. Sussman discontinued their lawsuit without any type of settlement.

.Dr. Kegerise's other allegations included: a due process violation, breach of contract, tor-tious interference with a contract, racial discrimination, sex discrimination, age discrimination, defamation, intentional infliction of emotional distress, and wrongful use of civil proceedings.

. In its response to the dissenting opinion, the majority first claims that the School District did not accept her resignation based on constructive termination and, second, that a school district can only accept a resignation authorized in the contract in accordance with the removal provisions set forth in Section 1080 of the School Code. 24 P.S. § 10-1080. The Pennsylvania Public School Code (School Code) of 1949 is the Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §§ 1-101—27-2702. Let us examine each of those issues.
In its first mention of Section 8.03 of the Superintendent’s contract, the majority does not dispute that this-provision allows Dr. Keg-erise to resign for "constructive termination.” Instead, the majority seems to suggest that this provision is not applicable because the School District somehow did not accept her resignation based on Section 8.03. However, there is no requirement under this provision, the School District accept her resignation because ' the contract gives her the unilateral right to exercise that provision. -
In any event, the majority bases that argument on the April 16, 2014 letter quoted previously in the dissenting opinion in which the School District’s counsel, in response to letters from Dr. Kegerise’s counsel that she had been constructively discharged, stated "Dr. Kegerise is and remains the Superintendent of Schools at [the School District] pursuant to the contract between her and the Board.” (R.R. at 71a.) This letter was the School District's position prior to her sworn federal complaint in which she swore under oath that she was constructively discharged, leading to its decision to accept her resignation. It also claims that the School District did not accept her resignation under Section 8.03 based on a selective quote from an April 22, 2014 letter from the School District’s counsel to Dr, Kegerise’s counsel that "she breached her employment contract because she failed to provide the requisite 60 days-notice of her resignation," which seems to indicate that the School District never accepted her resignation based on constructive termination. (R.R, at 257a.) Without saying so, the majority seems to be saying that since Section 8.03 provides that she could resign without notice for constructive termination, that it was not invoking that provision. Based on those two reasons, the majority concluded that “the Dissent’s rationale would essentially authorize a contractual provision [Section 8.03] that the [School District] disputes has ever occurred.”"
Let us take a look at the full paragraph that the majority selectively quotes:
As you know the Susquehanna Township School Board voted at last night’s meeting to formally accept the resignation of Dr. Susan Kegerise effective April 17, 2014. This is based upon her most recent filing in the Federal Middle District Court at docket no l:14-cv-00747-WWC, in which she claimed that she was "constructively terminated,” et al. I note that you received a letter on behalf of your client on April 14, 2014 in which Michael Miller advised that "Dr. Kegerise is and remains the Superintendent of School [s] at Susquehanna Township School. District pursuant to the contract between she and the Board,” (See copy of letter attached hereto for your reference). Despite this formal advice, she signed her verification on April 10, 2014 and the suit was filed on April 17, 2014. Accordingly, pursuant to the contract with the Board, she breached the terms of the contract and failed to provide sixty (60) days notice, (See paragraph 8.03 of her contract attached hereto). Her pay, benefits, health care, emoluments and any terms of her contract have ceased effective April 17, 1014.
From this paragraph, the School District stated that it was accepting her resignation based on her claim of constructive termination under Section 8.03. Whether the School District was correct in what emoluments she is entitled to as the result of the acceptance of her resignation for her constructive termination would be decided in the federal litigation,
The other basis the majority gives- with the dissent seems to be that Section 8.03, while it allows- a resignation for constructive termination, is that it is superseded by Section 1080 of the School Code, 24 P.S. § 10-1080, which provides for the removal of School Superintendents. In doing so, the majority seemingly takes the position that the only way a school district can accept a resignation is by removing the superintendent. It arrives at that position based on the last sentence of the following quote from Bums v. Board of Directors of Uniontown Area School District, 748 A,2d 1263, 1279 (Pa.Cmwlth.2000): ■
*946 In the instant case, although there is a contractual relationship, there is also a clear duty in the School Code for a duly elected district superintendent to be elected by the Board, to have his compensation set by the Board and, once elected, there are clear statutory duties imposed upon the superintendent to be responsible for the performance of statutory duties. The relationship between a superintendent, a school board and a school district is, therefore, not merely contractual, but is also statutory.[16]
Footnote 16 provides those statutory provisions as: "Sections 1071 through 1081 of the School Code, 24 P.S. §§ 10-1071 through 10-1081." While, admittedly, the relationship between the superintendent and the school district is not merely contractual but is also statutory, there has to be a statutory provision that the contract provision is in conflict. None of those provisions of the School Code deal with how a resignation is to be accepted or deal with the option by a superintendent to resign by claiming constructive discharge.
Somehow, the majority takes the leap that just because Section 1080 of the School Code is one of those provisions mentioned, that the only way a school district can accept a resignation under the terms set forth in a superintendent's contract is under that provision. It simply does not apply. Section 1080 deals with removals of superintendents, who can only be removed "for neglect of duty, incompetency, intemperance, or immorality.” 24 P.S. § 10-1080. The School District never mentioned that it intended to remove Dr. Kegerise, only that it was accepting her resignation under Section 8.03 of the contract. Remember, Dr. Kegerise was the moving party: she was the one that initially maintained that she was constructively tenninated; she was the one that rejected the School District’s position that she remain the Superintendent; and, notwithstanding all of that, she filed an action in federal court wherein she swore that she was constructively discharged. Then, and only then, did the School District accept her resignation.