**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3015

_____

ALBERT J. MCCARTHY,
                                    Appellant
                    v.

JEFFREY S. DARMAN; BOROUGH OF KENNETT SQUARE;
MARC D. JONAS; GRACE M. DEON; RICHARD A. PESCE;
EMIDIO J. FALINI; JOSEPH M. MAKOWSKI; DAVID B. MILLER;
JEROME E. RHODES; JOHN R. THOMAS

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 07-cv-03958)
District Judge: Honorable. Curtis Joyner

_____

Submitted Under Third Circuit LAR 34.1(a)
on March 26, 2010
Before: RENDELL and FUENTES, <u>Circuit Judges</u>,
and KUGLER, District Judge.

(Filed : March 30, 2010)

_____

OPINION

_____

_____

*  Honorable Robert B. Kugler, Judge of the United States District Court for
   the District of New Jersey, sitting by designation.

KUGLER, *District Judge*

This appeal arises out of an employment dispute between Appellant Albert J. McCarthy, former Chief of Police of the Borough of Kennett Square, and Appellees Jeffrey S. Darman, Borough of Kennett Square, Marc D. Jonas, Grace M. Deon, Richard A. Pesce, Emidio J. Falini, Joseph M. Makowski, David Miller, Jerome E. Rhodes, and John R. Thomas (collectively, "the Borough Defendants"). McCarthy appeals from the District Court's Opinion and Order denying his motion for partial summary judgment, granting the Borough Defendants' motion for summary judgment as to all of his federal claims, and dismissing his state law claims. McCarthy advances three arguments on appeal: 1) he was denied procedural due process when he was suspended/constructively discharged without a pre- or postdeprivation hearing; 2) he was denied procedural due process when he suffered a "stigma plus" deprivation of his liberty interest in his reputation; and 3) he was retaliated against in violation of the First Amendment.[1] For the reasons discussed below, we will affirm.

I.

As the parties are familiar with the facts, the recitation here is limited to those necessary to explain the decision. McCarthy was the Chief of Police of the Borough of Kennett Square. In early June 2007, he announced his intent to retire effective July 31,

---

[1] The First Amendment claim is raised for the first time on appeal and therefore is waived. See Brown v. Philip Morris Inc., 250 F.3d 789, 799 (3d Cir. 2001).

2007.  McCarthy sent a memorandum to "All Patrols" of the Kennett Square Police Department announcing that he would be teaching Lieutenant Edward Zunino the "fiscal side of the Police Department so that the law enforcement activities in the Borough will not be impeded."  A416.  Mayor Leon Spencer publicly announced McCarthy's retirement on June 18, 2009 via a separate memorandum, which stated, *inter alia*, that "Lt. Zunino will serve as Acting Chief upon Chief McCarthy's Retirement."  A435.

On July 26, 2007, David Fiorenza, Borough Manager, sent a letter to McCarthy accepting his retirement, but noting that McCarthy would not be paid for unused vacation time, holiday and personal pay, or overtime.  The letter also stated: "Because of its need to transition the leadership of the [Police] Department, it is the Borough's intention to name Lieutenant Zunino as acting Police Chief effective August 1, 2007."  A461.  The letter further noted that McCarthy was not permitted to hold two full-time jobs during the remainder of his time as Chief.  Seemingly on June 18, 2007, McCarthy had signed a contract to act as Chief of Police for nearby Kennett Township.

Notwithstanding his previous announcement, McCarthy sent a letter to Fiorenza dated July 30, 2007 that he had no intention of retiring "at any time in the near future."  A465.  In response, the Borough Council convened a special meeting on August 6, 2007 and voted to suspend McCarthy with pay.  The Borough Council further directed the Solicitor to "immediately investigate such further appropriate action which may be warranted including termination, suspension without pay or other disciplinary actions as

3

provided by law." A474-75. In the Official Minutes from the session, Council President Darman commented that the situation was "a dispute about the Borough and the Borough Council's fiduciary responsibility." A476. He further commented that he had "extreme confidence in Acting Chief of Police Zunino and the citizen's [sic] of the Borough should confidence [sic] that the Police Department will continue to function just fine." A476. Fiorenza sent a letter to McCarthy the same day notifying him that "[b]ecause of, among other things, the unexpected nature of your change in plans, please know that I have been directed by the Borough Council to place you in a work status of administrative leave with pay, effective immediately." A478.

McCarthy responded with a letter dated August 8, 2007 in which he indicated that he would not accept pay while not working, and he also indicated that he intended to stay on as Chief. Fiorenza responded via letter the next day asking McCarthy to clarify his employment status with the Borough and asking him to disclose whether he was working for Kennett Township, asking that he respond within three days. McCarthy did not respond. On August 22, 2007, Fiorenza sent McCarthy a letter with the subject "Loudermill Notice" and informed him that he might be subject to disciplinary action for submitting a false timesheet on July 3 (because he allegedly submitted time to the Borough while actually performing work for Kennett Township) and for failing to respond to the August 9 letter. A486-88. McCarthy supplied a lengthy response on August 29, asserting that he had protected property and liberty rights in his position as

4

Chief of Police, and lodging responses to the Borough's allegations and actions.

Then on September 14, 2007, Borough President Darman sent McCarthy a letter with the subject "Second Loudermill Notice," raising allegations that McCarthy was present in restricted areas of the Police Department, in defiance of the Borough's August 6 letter, and notifying McCarthy that the Borough was investigating whether he had removed information from a computer hard drive at the Department. A495-97. McCarthy responded to the allegations on September 21 and also announced his resignation as Chief. He filed the underlying suit the same day.

## II.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment, viewing the facts in a light most favorable to the nonmoving party, and applying the same standard that guides our district courts. Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

## III.

At the outset, we note that McCarthy's claimed violations can only relate to the August 6 suspension and not the September 21 purported constructive discharge. An involuntary resignation (i.e., a constructive discharge) triggers the protections of the due

5

process clause in only two circumstances: "(1) when the employer forces the employee's resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." Hill v. Borough of Kutztown, 455 F.3d 225, 233 n.10 (3d Cir. 2006). As the District Court properly pointed out, the only allegation in the Complaint vis-à-vis constructive discharge relates to the August 6 suspension, not the September 21 resignation. See McCarthy v. Darman, No. 07-CV-3958, 2009 WL 1812788, at *7 n.6 (E.D. Pa. June 24, 2009); A68 at ¶ 155 ("Although the defendants claim that McCarthy is currently serving as Chief of Police of the Borough and remains in full employment status with the municipality, its actions have denied McCarthy his protected interest in the position of Chief. He was *de facto* terminated on August 6, 2007."). The August 6 suspension cannot support a constructive discharge claim because McCarthy did not actually resign or retire on that date. While he may have intended to plead a claim based upon his later resignation, he failed to do so. Thus, the analysis here is limited to whether the August 6 suspension was a violation of his procedural due process rights.

To establish a procedural due process claim, a party must demonstrate that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life liberty or property, and (2) the procedures available to him did not provide due process of law." Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009) (quotations removed). Property interests within

6

the Fourteenth Amendment are defined by such sources as state law rules or understandings. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). As is relevant here, under Pennsylvania law, a person employed "in any police or fire force" cannot be "suspended, removed, or reduced in rank" absent one of six statutory reasons. 53 Pa. Stat. § 46190. This statute defines a protected property interest. See Dee, 549 F.3d at 230. Both McCarthy and the Borough Defendants argue at some length about whether McCarthy had a protected property interest at the time of his suspension (either because he was not a Civil Service Employee or because the Borough had already accepted his retirement), but for purposes of analysis, we will assume *arguendo* that such an interest existed.

Thus, we must determine what process McCarthy was due. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). At bottom, procedural due process requires notice and an opportunity to be heard. Id. at 542. What constitutes sufficient process is determined by balancing three factors: (1) the private interest at stake, (2) the risk of "erroneous deprivation" and the value of alternative procedures, and (3) the government's interest. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process usually requires that an individual receive a hearing before he is deprived of an interest; however, that rule is not absolute. See Gilbert v. Homar, 520 U.S. 924, 930 (1997). For example, the state may postpone a hearing until after the deprivation has occurred in "'extraordinary situations where some valid governmental interest is at stake . . . .'"

7

Roth, 408 U.S. at 570 n.7 (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see also Dee, 549 F.3d at 233 (quoting same).

In this dispute, the Borough Defendants did not provide notice or a hearing to McCarthy before he was suspended on August 6. Nevertheless, the District Court found, and we agree, that the circumstances presented an "extraordinary situation," meaning an absence of predeprivation process was permitted. The Borough Defendants assert that immediate action was necessary to assure "proper leadership of the Police Department." Appellant br. at 26; see also A1072 (Br. in support of summary judgment motion) ("The position of Chief of Police is one that is important to the proper operation of the police department and the protection of the citizenry.").

It is without doubt that order in the police department and a clear chain of command are vital interests to the Borough. Cf. Kannisto v. City & County of San Francisco, 541 F.2d 841, 843 (9th Cir. 1976) (holding police department has a "substantial interest in developing 'discipline, esprit de corp, and uniformity' . . . to ensure adequate 'promotion of safety of persons and property'" (quoting Kelley v. Johnson, 425 U.S. 238, 246, 247 (1976))); Waters v. Chaffin, 684 F.2d 833, 839 (11th Cir. 1982) (citing Kannisto). The public needs to be protected and subordinate officers need to know who is in command. Here, both the public and the Police Department were told time and again that Lt. Zunino would be in charge effective August 1. McCarthy's change of heart at the eleventh hour thus put the public's safety – at least in the eyes of

8

the Borough Council – in jeopardy as both McCarthy's and Zunino's statuses with the Borough and the Department were unclear. See A911 (August 3, 2007 newspaper editorial questioning "[s]ince the borough notified him that it was accepting his retirement plan and asked him to relinquish his position, is he legally authorized to be in uniform?"). The Borough Defendants' response under the circumstances comported with due process, provided they furnished a postsuspension opportunity to be heard. See Loudermill, 470 U.S. at 544-45 ("[I]n those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay."). And indeed they did provide a sufficient postdeprivation opportunity to be heard when they requested additional information from McCarthy regarding his employment status in their August 6 letter. Cf. id. at 546 (holding writing sufficient for due process in certain circumstances). Therefore, McCarthy was not deprived of a property interest without due process of the law.

Likewise, McCarthy was not deprived of a liberty interest. To state a due process claim for deprivation of a liberty interest in reputation, "a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." Hill, 455 F.3d at 236. This is the "stigma-plus" test. Id. The stigma portion of the test is met where the alleged stigmatizing statements (1) were made publicly and (2) were false. Id. McCarthy argues that the stigmatizing statement from the Borough Defendants was the publication of the Official Minutes from the August 6 meeting on the internet, which said that he was

9

suspended and said an investigation was on-going. Appellant br. at 33. However, as the District Court properly found, these statements do not show a stigma because they were not false. Indeed, McCarthy was suspended and the Borough Defendants were engaged in an on-going investigation. Therefore, McCarthy was not deprived of a liberty interest without due process of the law.

For these reasons, McCarthy was not deprived of his Fourteenth Amendment right to due process. Therefore, we will affirm the decision of the District Court denying his motion for partial summary judgment and granting the Borough Defendants' motion for summary judgment as to all federal claims.