# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Susan Kegerise                                  :
                                                    :    No. 232 C.D. 2015
                          v.                        :
                                                    :    Argued:  March 7, 2016
Kathy L. Delgrande, John F. Dietrich,               :
Clifton D. Edwards, Carol L. Karl,                  :
Jesse Rawls, Sr., Dr. Peter J. Sakol,               :
Helen D. Spence, and Mark Y.                        :
Sussman, In their Official Capacity,                :
                          Appellants                :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
JUDGE McCULLOUGH[1]                              FILED:  September 13, 2016


The Board of School Directors (the School Board)[2] of the Susquehanna Township School District (District) appeal from the November 5, 2014 order of the Court of Common Pleas of Dauphin County (trial court), which essentially granted Dr. Susan Kegerise's (Dr. Kegerise) mandamus complaint and directed the School Board to reinstate her as the superintendent of the District.

---

[1] This opinion was reassigned to the author on April 28, 2016.

[2] The named appellants are individual members of the School Board.

## Facts and Procedural History

In January 2010, Dr. Kegerise was hired as the superintendent of the District. In January 2013, the School Board voted to extend her contract and, in April 2013, a majority of the School Board ratified the finalized contract, which was set to expire on June 30, 2017.

On March 25, 2014, Dr. Kegerise advised the School Board that she was currently under medical care and, per her physician's instruction, would be out of work through April 21, 2014.[3] (Reproduced Record (R.R.) at 578a-79a.)

On April 16, 2014, in response to several letters from Dr. Kegerise's counsel to the District alleging that she had been constructively discharged, the District's counsel responded with a letter stating that:

> Dr. Kegerise is and remains the Superintendent of Schools at Susquehanna Township School District pursuant to the contract between she and the Board. Her recent absence from work was based on a physician's note received from Dr. Kegerise. Her time away from the District since that day has been recorded as sick leave derived from Dr. Kegerise's pre-existing sick leave accumulation.
>
>         \*      \*      \*
>
> Finally, the District understands that Dr. Kegerise's current physician's note indicates that she is precluded from working until April 21, 2014. If she is cleared to return to work, then the District hopes and expects her to return to her duties as Superintendent. If she is not, the District will continue to debit her sick leave time and continue to process her workers['] compensation claim.

(R.R. at 71a-72a.)

---

[3] By letter dated April 21, 2014, Dr. Kegerise's physician advised that Dr. Kegerise "is to be off of work until further notice due to work related medical issues." (R.R. at 556a.)

On April 17, 2014, Dr. Kegerise filed a complaint against the District and individual School Board members (federal complaint) in the United States District Court for the Middle District of Pennsylvania, alleging, *inter alia*, that the District had caused her working conditions to become so intolerable that it constituted a constructive discharge, although she acknowledged that she had not been formally terminated. As part of her federal complaint, Dr. Kegerise submitted a verification, affirming that the statements contained therein were true and correct to the best of her knowledge. (R.R. at 74a-116a.)

On April 21, 2014, the School Board met in a properly advertised public session, amended its agenda mid-meeting to add a motion to accept the resignation of Dr. Kegerise, and voted to approve the motion to "[a]ccept the resignation of Dr. Kegerise as superintendent that is implicit with the term 'constructive discharge,['] effective April 17, 2014." (R.R. at 252a.) The motion passed with five affirmative votes, zero objections, and three abstentions. The abstaining School Board members cited a lack of information for their non-participation. Dr. Kegerise was not present at the meeting. (R.R. at 50a-51a, 249a-55a.)

By letter dated April 22, 2014, the District's counsel advised Dr. Kegerise's counsel that the School Board had voted to formally accept Dr. Kegerise's resignation, effective April 17, 2014, based upon her filing of the federal complaint. The letter also stated that Dr. Kegerise had breached her employment contract because she failed to provide sixty days' notice of her resignation. Accordingly, Dr. Kegerise's pay, benefits, health care, emoluments, and any terms of her contract ceased to be effective on April 17, 2014. (R.R. at 25a.)

On April 24, 2014, Dr. Kegerise filed a complaint in mandamus in the trial court and an emergency motion for peremptory judgment pursuant to Pennsylvania Rule of Civil Procedure No. 1098, requesting that it order the School

3

Board to reinstate her and compensate her from April 17, 2014, to the date of reinstatement. The School Board filed preliminary objections to the complaint and a response opposing Dr. Kegerise's emergency motion. (R.R. at 19a-30a.)

At the parties' request, the trial court preliminarily determined whether an emergency existed sufficient to have Dr. Kegerise's complaint considered on an expedited basis and, on May 2, 2014, the parties filed joint stipulations of fact. By order dated May 14, 2014, the trial court determined that the matter did not constitute an emergency. (R.R. at 48a, 261a.)

On May 16, 2014, Dr. Kegerise filed an amended complaint in mandamus, seeking reinstatement and compensation. The School Board filed preliminary objections to Dr. Kegerise's amended complaint, arguing that her claim must fail because she does not have a clear legal right to the retraction of the School Board's acceptance of her resignation and she has an adequate remedy at law. By order dated June 20, 2014, the trial court denied the School Board's preliminary objections. Thereafter, the School Board filed an answer and new matter, alleging that Dr. Kegerise was estopped from asserting that she did not resign because she submitted a signed verification with her federal complaint indicating that the statements contained therein were true, including that she had been constructively discharged, which requires resignation as a necessary prerequisite to the cause of action. (R.R. at 261a-322a.)

On October 16, 2014, the trial court conducted an evidentiary hearing limited to whether Dr. Kegerise had intended to resign from her position as the District's superintendent when she filed her federal complaint. On November 5, 2014, the trial court issued an order directing the School Board to reinstate Dr. Kegerise as the District's superintendent and restore all back pay and benefits as if her employment had not been interrupted. The School Board filed a *nunc pro tunc*

4

motion for post-trial relief and, on February 11, 2015, the trial court issued an order denying the same.

On appeal to this Court,[4] the School Board argues that the trial court erred in reinstating Dr. Kegerise because: her federal complaint alleging constructive discharge constituted a resignation; the District had no legal duty to reverse its vote and reinstate Dr. Kegerise as superintendent; the parties stipulated that the procedures the School Board used to accept Dr. Kergerise's resignation were proper; and Dr. Kegerise was not entitled to a hearing because she resigned and was not removed for cause.

## Discussion

### Impact of Federal Complaint

The School Board argues that Dr. Kegerise's filing of her federal complaint constituted a resignation. According to the School Board, Dr. Kegerise's verified federal complaint alleging constructive discharge inherently constitutes a resignation because resignation is a necessary prerequisite of the cause of action.

"Constructive discharge occurs only when an employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Reya and Haig Hair Salon v. Pennsylvania Human Relations Commission*, 915 A.2d 728, 733 (Pa. Cmwlth. 2007) (internal

---

[4] Our scope of reviewing in a mandamus action is limited to determining whether the trial court abused its discretion or committed an error of law and whether sufficient evidence exists to support the trial court's findings. *Orange Stones Co. v. City of Reading, Zoning Hearing Board*, 32 A.3d 287, 289-90 (Pa. Cmwlth. 2011). Our standard of review of a trial court's grant of mandamus is *de novo*. *County of Carbon v. Panther Valley School District*, 61 A.3d 326, 331 n.3 (Pa. Cmwlth. 2013).

quotation omitted). Clearly, a constructive discharge action is assessed by an objective standard. *Connors v. Chrysler Financial Corporation*, 160 F.3d 971, 974 (3d Cir. 1998) ("The test applied to constructive discharge claims is objective whether a reasonable jury could conclude that [the employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign."). On its face, the constructive discharge standard contemplates termination without a plaintiff's actual resignation, as long as a reasonable person would have felt compelled to resign, even if the plaintiff did not actually resign. The test is whether a hypothetical, reasonable employee would have resigned, not the employee alleging constructive discharge.

Additionally, "[e]mployee resignations . . . are presumed to be voluntary." *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999). However, an employee's resignation will be deemed involuntary where the employer forces the resignation by coercion or duress. *Id*. at 228. Here, Dr. Kegerise alleged that a reasonable person in her position would feel *compelled to resign*. Thus, she alleged that the School Board's conduct would force a reasonable person to involuntarily resign. It would be inexplicable to hold that the School Board is authorized to act as if Dr. Kegerise resigned voluntarily when she alleged that it created circumstances that compelled an involuntary resignation. As the trial court aptly noted, "the General Assembly provided a very limited methodology for removing superintendents and assistant superintendents in order to insulate them from arbitrary and capricious activities of the School Board and its individual members." (Trial court op. at 4.) To endorse the School Board's argument would essentially authorize a school board to create a condition that would constitute a termination as a matter of law, i.e., intolerable working conditions that would compel a reasonable person to resign, but permit it to proceed as if an employee executed a voluntary

6

resignation. The School Board's assertion would thwart the General Assembly's deliberate removal procedure for superintendents and, therefore, must fail. Accordingly, the School Board's argument that Dr. Kegerise's filing of a federal complaint alleging constructive discharge constituted a resignation is unpersuasive.

### Writ of Mandamus

The School Board next argues that the trial court's order reinstating Dr. Kegerise was erroneous because it directs the School Board to reverse its exercise of discretion in accepting her federal complaint as a resignation. The School Board also argues that the trial court erred because Dr. Kegerise failed to sustain her burden of establishing a clear right to relief and a corresponding duty in the School Board to reinstate her to the superintendent position. Conversely, Dr. Kegerise argues that Section 1080 of the Public School Code of 1949 (School Code)[5] provides the exclusive mechanism for removing superintendents and the School Board's failure to follow the enumerated procedures provided therein establishes her clear right to reinstatement.

Mandamus is an extraordinary remedy designed to compel the performance of a ministerial act or a mandatory duty and may only be granted where the plaintiff has established a clear legal right, a corresponding duty in the defendant, and that no other appropriate remedy is available. *Orange Stones Co.*, 32 A.3d at 290. "The purpose of a mandamus is not to establish legal rights but only to enforce those legal rights that have already been established." *Id.* However, mandamus may not be used to "direct the exercise of judgment or discretion in a particular way, or to direct the retraction or reversal of an action already taken." *Chanceford Aviation*

---

[5] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §10-1080.

7

*Properties, L.L.P. v. Chanceford Township Board of Supervisors*, 923 A.2d 1099, 1108 (Pa. 2007).

> Section 1080 of the School Code provides that:
>
> (a)  District superintendents and assistant district superintendents may be removed from office and have their contracts terminated, after hearing, by a majority vote of the board of school directors of the district, for neglect of duty, incompetency, intemperance, or immorality, of which hearing notice of at least one week has been sent by mail to the accused, as well as to each member of the board of school directors.

24 P.S. §10-1080(a).

This Court's decision in *Burns v. Board of Directors of Uniontown Area School District*, 748 A.2d 1263 (Pa. Cmwlth. 2000), is instructive.  In *Burns*, the plaintiff was a duly-elected superintendent serving a five-year term that expired in June 1998.  In May 1997, three board members lost their respective elections; before their terms expired, a majority of the school board elected the plaintiff to superintendent for an additional five-year term from July 1998 to July 2003 and approved his compensation and other terms and conditions for the same.  However, in December 1997, before the plaintiff's existing contract expired, a newly-elected board voted to rescind his upcoming 1998-2003 contract.  Accordingly, the plaintiff filed a mandamus action seeking to compel the school district to reinstate him as duly-elected superintendent pursuant to the School Code.  The trial court granted the district's preliminary objections and dismissed the plaintiff's complaint.

The plaintiff appealed to this Court, arguing that the prior school board lawfully elected him, set his salary, and, as such, the new school board prevented him from fulfilling his duties and bypassed the only statutory provisions authorizing removal.  According to the plaintiff, mandamus was appropriate to compel the district

8

"to honor the due election of Superintendent and the provisions of his contract." *Id*. at 1266.

We acknowledged that the plaintiff had an available remedy via a contract action to repair the contractual harm to the plaintiff. But, we recognized the General Assembly's special attention to the superintendent position:

> A superintendent does not have tenure like the professional employees, e.g., principals, teachers, etc. A superintendent is not protected by collective bargaining under Act 195[6] nor is he included under Act 93,[7] as administrators are, with certain rights to meet and discuss. Superintendents have, however, obviously been given select consideration by the Legislature in the School Code, which gives them unique status as a non-voting board member as well as being the chief executive officer of the District. Long term job security for that office is provided by mandating a minimum contract length of at least three years, by restricting removal to four specific reasons, [and] by forcing the school boards to make a decision on retention at least five months before the expiration of the contract . . . ."
>
> By expressly mandating the procedure for the re-election of [the plaintiff] for renewal of his contract and by expressly providing for removal thereafter, the Legislature excluded by implication any exception to that procedure in election years for school board members, i.e., *expression unium est exclusion alterium*.

*Id*. at 1266-67.

We noted that the school board's decision to elect the plaintiff to an additional five-year term prior to the expiration of the individual members' terms was

---

[6] Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101 – 1101.2301.

[7] Section 1164 of the School Code was added by the Act of June 29, 1984, P.L. 438, *as amended*, 24 P.S. §11-1164. Section 1164 of the School Code is commonly known as "Act 93."

"a lawful and mandated fulfilling of its duty under the School Code to act upon [the plaintiff's] expiring tenure" and reasoned that the school board's lawful election triggered the imposition of statutory duties on the superintendent and an obligation to perform those duties. *Id*. at 1270. As such, we stated that "[t]he relationship between a superintendent, a school board and a school district is, therefore, not merely contractual, but is also statutory." *Id*. at 1269. Consequently, we determined that the harm sought to be remedied was not merely for a breach of contract; rather, it was for a statutory breach "to enforce the School Code's provisions regarding election, setting compensation and enforcement of the duties of a duly elected superintendent." *Id*.

Moreover, because the School Code provides for the plaintiff's election, tenure, duties, and compensation, we determined that any potential contract damages were insufficient to remedy the statutory harm committed by the plaintiff's improper removal. We reasoned that the plaintiff had a clear legal right to performance of his statutory duties and, therefore, a corresponding duty existed in the school board to reinstate him and provide him with the agreed-upon compensation. However, we clarified that mandamus was not appropriate to enforce the remaining provisions of the plaintiff's employment contract because the School Code is silent regarding any other employment conditions of a superintendent other than the length of term, compensation, and a recital of certain statutorily mandated duties. *See also* Section 1081 of the School Code, 24 P.S. §10-1081.

The case of *Antonini v. Western Beaver Area School District*, 874 A.2d 679 (Pa. Cmwlth. 2005), is also instructive. In *Antonini*, the superintendent plaintiff was suspended with pay following allegations that, *inter alia*, he had authorized the

10

transfer of Title I[8] funds to use for tuition reimbursement for two teachers studying for principal certificates in excess of the amount provided for in the relevant collective bargaining agreement and failed to give the school board the requisite five days' notice when interviewing a prospective employee. The plaintiff filed a complaint, seeking reinstatement until formal charges had been filed and a statutorily mandated hearing had been held or, alternatively, contractual damages for unilateral termination. The trial court granted mandamus and ordered the plaintiff's reinstatement, distinguishing the Supreme Court's decision in *Burger v. Board of School Directors of McGuffey School District*, 839 A.2d 1055 (Pa. 2003),[9] because

---

[8] Part A of the Elementary and Secondary Education Act of 1965, *as amended*, 20 U.S.C. §§6301-6339, 6571-6578.

[9] In *Burger*, the superintendent plaintiff was suspended without pay pending investigation of allegations that he had sexually harassed a school district employee. Prior to a removal hearing, the plaintiff filed a complaint seeking, *inter alia*, reinstatement to his position because the School Code did not authorize a superintendent's suspension absent a hearing. The trial court granted mandamus and directed the plaintiff's reinstatement. The school district appealed to this Court and, in a divided *en banc* opinion, we reversed, reasoning that the plaintiff had failed to establish the lack of an alternative remedy because, ultimately, he could appeal the adverse removal decision pursuant to section 752 of the Local Agency Law, Act of April 28, 1978, P.L. 202, *as amended*, 2 Pa.C.S. §752. However, we noted that section 1080 of the School Code was silent regarding suspension, but concluded that suspension pending removal is an inherent managerial prerogative when serious misconduct charges are levied; however, we noted that the school board's suspension prerogative was limited by procedural due process.

On appeal, our Supreme Court rejected any categorical rule that "the availability of a post-termination appeal necessarily constitutes an adequate remedy with respect to a prior, pre-hearing deprivation in the nature of an interim, uncompensated suspension of a public employee." *Burger*, 839 A.2d at 1060. Rather, the Supreme Court stated that "the adequacy-of-remedy question as applied to such a deprivation requires a more fact-dependent inquiry, as well as a more circumspect approach on the part of the reviewing court, particularly in view of the impact on the employee's livelihood" and articulated a list of factors that must be considered when evaluating the adequacy of any alternative remedy. Notwithstanding the different test applied, the Supreme Court affirmed our order, noting that the School Code "vests school districts in this Commonwealth with 'all necessary powers to enable them to carry out [the School Code's] provisions'" and reasoning that "the School
**(Footnote continued on next page…)**

the allegations did not constitute "serious misconduct" sufficient to warrant non-compliance with section 1080 of the School Code and the school board did not sufficiently observe the plaintiff's procedural due process rights. *Antonini*, 874 A.2d at 682.

On appeal to this Court, we distinguished the allegations presented from those in *Burger* and rejected "the School Board's assumption that its 'managerial prerogative' to suspend with pay is generally available." *Id*. at 683. Instead, we stated that "resort to procedures beyond those specified in the School Code is the exception rather than the rule . . . . It is the seriousness of the misconduct alleged that forms the necessity for the implied power." *Id*. Accordingly, because the suspension was not executed in compliance with section 1080 of the School Code, we concluded that the plaintiff established "a clear right to be treated in accordance with those explicit statutory provisions." *Id*. Moreover, considering the factors articulated in *Burger*, we reasoned that any other available remedies were inadequate and, therefore, mandamus was proper.

While the facts of *Burns* and *Antonini* are readily distinguishable from the present matter because the School Board did not initiate action against Dr. Kegerise for disciplinary reasons, the analysis therein is applicable here. Although the School Code is silent regarding a school board's authority to accept a superintendent's resignation, the School Board's action had the identical effect as that

---

**(continued…)**

Code's removal provision pertaining to superintendents does not divest school boards of their implied authority to suspend such officials accused of serious misconduct . . . within the constraints of procedural due process." *Id*. at 1061 (citing Section 211 of the School Code, 24 P.S. §2-211).

of the school boards in *Burns* and *Antonini*; a superintendent's removal.[10] However, as we articulated in *Burns*, because the School Board had elected Dr. Kegerise to a valid employment term pursuant to the School Code, she was subject to statutorily-mandated duties as superintendent and has a clear legal right to perform the same. *See Burns*, 748 A.2d at 1270; 24 P.S. §10-1081. Additionally, *Burns* instructs that the School Board has a corresponding duty to reinstate Dr. Kegerise and provide her with the agreed-upon compensation. Moreover, we find *Antonini* persuasive in that it advises that a school board's "managerial prerogative" is not unlimited and a resort to procedures beyond those specified in the School Code is the exception rather than the rule. Although this is a fact-intensive case that implicates conduct the General Assembly did not apparently contemplate, i.e., accepting a superintendent's resignation, we decline to endorse an implied procedure that could circumvent the School Code's limited removal mechanism. Therefore, because Dr. Kegerise has a clear legal right to perform her duties as superintendent under the School Code and the School Board has a corresponding duty to reinstate her, the trial court's issuance of mandamus was proper.

**The School Board's Procedures**

---

[10] The School Code vests school boards with all necessary powers to appoint an acting superintendent to fill any vacancy. *See* Sections 211 and 1079 of the School Code, 24 P.S. §§2-211, 10-1079. However, as articulated above, Dr. Kegerise's filing of a federal complaint alleging constructive discharge did not constitute a resignation and, therefore, no vacancy existed for the School Board to take action to fill.

13

The School Board next argues that the trial court erred in finding that the procedures the School Board used to accept Dr. Kegerise's alleged resignation were improper because the parties stipulated that those procedures were proper.

In its opinion, the trial court stated, in pertinent part:

> At the next regularly scheduled Board meeting on April 21, 2014, an executive session was called in the middle of the public session wherein the Board determined to take a vote on whether to accept Plaintiff's "resignation" in the form of the Federal Complaint. During the hearing on October 16, 2014, Defendant Kathy DelGrande testified that in her history as a Board member that the Board, as a whole, had never amended its agenda in the middle of a meeting. (N.T. p. 33). Further, the Board had never accepted a resignation from an employee that was not in writing. (N.T. p. 33).

(Trial court's op. at 11) (internal footnote omitted).

The trial court also noted that only six of the nine board members were present at the mid-meeting executive session. (Trial court op. at 11 n.6.)

The School Board is correct that the parties stipulated that "[t]he Board did not violate the School Code or any Board policy or practice by adding to the Agenda the Motion." (R.R. at 51a.) However, contrary to the School Board's assertion, the trial court did not determine that the procedures were improper; instead, it only acknowledged how the vote occurred. The stipulation does not prohibit the trial court from recognizing the unusual nature of the School Board's conduct. As the record indicates, the procedures that were used, although lawful, were novel. Therefore, we discern no error in the trial court's consideration of the procedures that culminated in the School Board's vote to accept Dr. Kegerise's alleged resignation.

**Hearing**

14

Finally, the School Board argues that the trial court erred when it determined that Dr. Kegerise was entitled to a hearing under the School Code when she did not request one and a hearing is not required in the event of a superintendent's resignation.

As articulated above, Dr. Kegerise's filing of the federal complaint did not constitute a resignation and the School Board's argument in that regard must fail. Similarly, section 1080 of the School Code does not require that a superintendent request a hearing. Rather, it states that "superintendents may be removed from office and have their contracts terminated, *after hearing*, by a majority vote of the board of school directors of the district . . . ." 24 P.S. §10-1080(a) (emphasis added). The General Assembly did not include a statutory requirement that a superintendent request a hearing and, thus, it would be improper for this Court to impose one. Therefore, we discern no error in the trial court's conclusion that "[i]n the event the Board has a basis to terminate Dr. Kegerise, it should proceed under the provision of 24 P.S. § 10-1080." (Trial court op. at 14.)

**Conclusion**

The School Board's argument that Dr. Kegerise's filing of the federal complaint constituted a resignation because resignation is a necessary predicate of the cause of action is unpersuasive. Additionally, the School Board's assertion that mandamus is improper because Dr. Kegerise failed to establish a clear right to relief and a corresponding duty in the School Board to reinstate her must fail. Moreover, we discern no error in the trial court's consideration of the novel, but lawful, procedures the School Board used in voting on Dr. Kegerise's alleged resignation and its conclusion that, because she did not resign, a hearing pursuant to section 1080 of

15

the School Code would be proper if the School Board chooses to remove her as superintendent.[11]

 

_____

PATRICIA A. McCULLOUGH, Judge

Judge Wojcik did not participate in this decision.

_____

[11] The Dissent asserts that issuance of mandamus is improper because Dr. Kegerise's employment contract contained a provision stating that she need not provide notice of her resignation in the event she is constructively discharged. According to the Dissent, Dr. Kegerise exercised her contractual right pursuant to this provision, resigned pursuant to the same, and the School Board acted within its discretion to accept that decision. The Dissent would resolve this matter purely on contractual grounds.

The contract provision the Dissent identifies states that "[n]o notice whatsoever shall be required . . . should her resignation be . . . caused by constructive termination by the Board." (R.R. at 133a.) Therefore, for this provision to be implicated, Dr. Kegerise's resignation must be caused by constructive termination by the School Board. If, pursuant to the Dissent's position, this is purely a contractual matter, it could be argued that, by accepting her resignation pursuant to the contract provision, the School Board conceded that Dr. Kegerise was constructively discharged. However, throughout this litigation, the School Board has averred that Dr. Kegerise was not constructively discharged. Moreover, in its April 22, 2014 letter, the District's counsel advised Dr. Kegerise that she had *breached her employment contract because she failed to provide the requisite sixty days' notice of her resignation*. (R.R. at 25a.) Finally, there is no authority, statutory, contractual, or otherwise, indicating that the School Board has any discretion in this matter. The Dissent's rationale would essentially authorize the School Board to take advantage of a contractual provision that it disputes ever occurred. Rather, the School Board "has to pick an option . . . but not both." (Slip op. at 11.)

Importantly, as we stated in *Burns*, "[t]he relationship between a superintendent, a school board and a school district is, therefore, not merely contractual, but is also statutory." *Id*. at 1269. Therefore, contrary to the Dissent's position, this is not merely a contractual matter and an attempt to reduce it to such is erroneous. This is a statutory matter governed by the School Code and section 1080 of the School Code provides the exclusive mechanism for a superintendent's removal.

16

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Dr. Susan Kegerise | : |
| | :    No. 232 C.D. 2015 |
| v. | : |
| | : |
| Kathy L. Delgrande, John F. Dietrich, | : |
| Clifton D. Edwards, Carol L. Karl, | : |
| Jesse Rawls, Sr., Dr. Peter J. Sakol, | : |
| Helen D. Spence, and Mark Y. | : |
| Sussman, In their Official Capacity, | : |
| Appellants | : |

## *ORDER*

AND NOW, this 13th day of September, 2016, the November 5, 2014 order of the Court of Common Pleas of Dauphin County is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Susan Kegerise                          :
                                            :
              v.                            :   No. 232 C.D. 2015
                                            :   Argued:  March 7, 2016
Kathy L. Delgrande, John F. Dietrich,       :
Clifton D. Edwards, Carol L. Karl,          :
Jesse Rawls, Sr., Dr. Peter J. Sakol,       :
Helen D. Spence, and Mark Y.                :
Sussman, In their Official Capacity,        :
              Appellants                    :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI                     FILED: September 13, 2016


              This case involves an appeal by the Board of School Directors (Board)
of the Susquehanna Township School District (School District) from a mandamus
order of the Court of Common Pleas of Dauphin County (trial court) directing the
Board to reinstate Dr. Susan Kegerise (Dr. Kegerise) as Superintendent of the School
District because she had been illegally removed from office.  I respectfully dissent
because Dr. Kegerise was not removed but resigned, and mandamus does not lie to
determine whether the School District properly determined that the actions she took
constituted a resignation within the meaning of her employment contract with the
School District.

**I.**

Dr. Kegerise's contract as Superintendent of the School District expired in June 2017 and included separate termination and resignation clauses. Section 8.03, pertaining to resignation, provided:

> 8.03 <u>RESIGNATION</u>.[1]  In the event that Superintendent seeks to resign or separate her employment with Board for any reason other than death, illness, or disability, Superintendent shall give District at least sixty (60) days' written notice in advance of the employment severance date.  The failure of Superintendent to give such required notice shall cause Superintendent to lose any entitlement to any unused but accrued payments that may be offered pursuant to the fringe benefits under this AGREEMENT. No notice whatsoever shall be required by the Superintendent should her resignation be caused by the Board's breach of this AGREEMENT **or caused by constructive termination by the Board or any of its members**.  Resignation shall not jeopardize any benefits earned prior to the Superintendent's resignation.

(Reproduced Record (R.R.) at 133a) (emphasis added).

The facts that led up to the Board concluding that she had resigned under this provision began on March 24, 2014, when Dr. Kegerise informed the School District that she needed to take medical leave per a physician's recommendation from March 14, 2014, through April 21, 2014, due to stress from her employment.  Her physician later advised her to extend her medical leave indefinitely and the School District was notified.

---

[1] The 2013 contract newly added this provision.

Dr. Kegerise then had her legal counsel send several letters to the School District stating that she had been constructively discharged. In response, the School District's solicitor sent a letter on April 16, 2014, to Dr. Kegerise's counsel addressing her employment status. Specifically, the School District solicitor's letter asserted that, although Dr. Kegerise's counsel indicated in previous letters that "Dr. Kegerise has been constructively terminated," she had not, stating:

> *Dr. Kegerise is and remains the Superintendent of Schools* at [the School District] pursuant to the contract between her and the Board. Her recent absence from work was based on a physician's note received from Dr. Kegerise. Her time away from the [School] District since that day has been recorded as sick leave derived from Dr. Kegerise's pre-existing sick leave accumulation.
>
> On April 10, 2014, Dr. Kegerise filed a report for workers['] compensation benefits. That report has been forwarded to the [School] District's workers['] compensation carrier and will be processed in the normal course of business. Her application will be either granted or denied following an investigation by the workers['] compensation carrier. Accordingly, the determination of whether or not Dr. Kegerise suffered a work-related injury will depend on the outcome of this process.
>
> ***
>
> Finally, the District understands that Dr. Kegerise's current physician's note indicates that she is precluded from working until April 21, 2014. If she is cleared to return to work, *then the [School] District hopes and expects her to return to her duties as Superintendent*. If she is not, the [School] District will continue to debit her sick leave time and continue to process her workers['] compensation claim.

(*Id.* at 71a-72a) (emphasis added).

The next day, on April 17, 2014, Dr. Kegerise filed a civil complaint (federal complaint) against the School District and Carol L. Karl (Ms. Karl), Jesse Rawls (Mr. Rawls),[2] and Mark Y. Sussman (Mr. Sussman),[3] all elected members of the Board, in the United States District Court for the Middle District of Pennsylvania, alleging, *inter alia*, constructive termination of her employment.[4] As part of the federal complaint, Dr. Kegerise signed a verification dated April 10, 2014, affirming that the statements contained in her federal complaint were true and correct to the best of her knowledge.

In the federal complaint, Dr. Kegerise alleged, among other things, that the School District constructively terminated her employment. She sought damages in excess of six million dollars, including compensatory and economic damages "for loss of contractual salary and other emoluments of employment," consequential damages for "damage to professional reputation and loss of future salary as an educational administrator," punitive or exemplary damages, attorneys' fees and other relief. (*Id.* at 93a.)

---

[2] Mr. Rawls was President of the Board from December 2011 to December 2012.

[3] In November 2013, Mr. Rawls and Mr. Sussman filed a civil complaint in the United States District Court for the Middle District of Pennsylvania against the Board, the School District and Dr. Kegerise to enjoin them from violating Mr. Rawls's and Mr. Sussman's constitutional rights and to nullify the employment contract between the Board and Dr. Kegerise. On January 21, 2014, Mr. Rawls and Mr. Sussman amended their complaint, naming only Dr. Kegerise as the defendant. In March 2014, Mr. Rawls and Mr. Sussman discontinued their lawsuit without any type of settlement.

[4] Dr. Kegerise's other allegations included: a due process violation, breach of contract, tortious interference with a contract, racial discrimination, sex discrimination, age discrimination, defamation, intentional infliction of emotional distress, and wrongful use of civil proceedings.

On April 21, 2014, the Board accepted Dr. Kegerise's resignation per Section 8.03 of her Superintendent's contract pertaining to resignation because of her repeated assertions that she was constructively discharged, including those filed under oath in her federal complaint.

## II.

The central issue on appeal is whether Dr. Kegerise's filing of the federal complaint was a resignation from her position with the School District as envisioned by Section 8.03 of her Superintendent's contract, thereby precluding mandamus relief.

## A.

Constructive discharge occurs only when an employer knowingly permits conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign. *Raya and Haig Hair Salon v. Pennsylvania Human Relations Commission*, 915 A.2d 728, 733 (Pa. Cmwlth. 2007) (citation omitted). In determining what that term "constructive discharge" means within the meaning of Dr. Kegerise's federal complaint, in *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004), the United States Supreme Court found that for a plaintiff to establish "constructive discharge," the plaintiff "must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id*. at 134. The Court added that under this doctrine, "an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Id*. at 141. The Court concluded that:

> Unlike an actual termination, which is always effected through an official act of the company, a constructive discharge need not be. *A constructive discharge involves both an employee's decision to leave and precipitating conduct*: The former involves no official action; the latter, like a harassment claim without any constructive discharge assertion, may or may not involve official action.

*Id.* at 148 (emphasis added).

Pennsylvania federal courts have also maintained that an employee's constructive discharge is predicated on the employee's resignation. *See McCarthy v. Darman,* 372 F. App'x 346, 349 (3d Cir. 2010) (refusing to recognize an employee's constructive discharge claim arising from the employee's suspension because the employee did not actually resign on the date of suspension); *McWilliams v. Western Pennsylvania Hospital*, 717 F. Supp. 351, 355-56 (W.D. Pa. 1989) (holding that "there must be at least some relation between the occurrence of the discriminatory conduct and the employee's resignation" in a constructive discharge claim).

## B.

Dr. Kegerise filed her federal complaint on April 17, 2014, one day after her attorney received a letter specifically denying that she had been constructively terminated, confirming that she remained the School District's Superintendent and reiterating that the School District "hope[d] and expect[ed] her to return to her duties as Superintendent" once she was no longer on sick leave. (R.R. at 72a.) However, in her federal complaint, Dr. Kegerise maintained that she was constructively terminated due to intolerable working conditions. She also requested damages for loss of

contractual salary, including future salary, thereby acknowledging that her employment ended before the Board passed the motion to accept her "resignation."

The term "constructive termination" was used in Dr. Kegerise's 2013 contract, specifically under Section 8.03's Resignation provision, and stated, in pertinent part: "No notice … shall be required by the Superintendent should her resignation be caused by … constructive termination by the Board or any of its members." (*Id*. at 133a.) Dr. Kegerise testified that she understood "constructive termination" to essentially mean that the working conditions might become so intolerable due to the Board's actions that she would be forced to resign. She testified that the term "constructive termination" used in her 2013 contract had the same meaning as the "constructive termination" term she used in her federal complaint. Moreover, Dr. Kegerise signed the verification on the federal complaint on April 10, 2014, before receiving the School District solicitor's letter and before the Board's vote, stipulating that she stood behind all of the averments made in the federal complaint, thereby indicating that the use of the term "constructive termination" was, in essence, her resignation.

Dr. Kegerise exercised her right to resign under Section 8.03 of the Contract. Dr. Kegerise alleged intolerable working conditions, including harassing conduct by Board members causing her to be unable to satisfy her duties as Superintendent and possibly causing her health issues. She is the one that has the right to exercise the right to resign under this provision, and she was the one that asked that it be included in the contract. Whether the School Board thinks she has been constructively terminated is irrelevant because this provision gave her the right

to resign with the ability to make a claim for contractual damages which she would be unable to do if she just resigned. Dr. Kegerise would not have been able to make out a claim that she had been constructively terminated if she had not effectively resigned, as constructive termination is predicated on the employee's resignation.

While I would hold that no reasonable person could find that she did not effectively resign, if that matter is in dispute, mandamus would still not lie because it is not available to resolve a contract dispute. *Kaelin v. University of Pittsburgh*, 218 A.2d 798 (Pa. 1966); *Strank v. Mercy Hospital of Johnstown*, 117 A.2d 697 (Pa. 1955).

### III.

The majority does not accept this analysis simply by finding that the School District removed Dr. Kegerise from her position, rather than that she had resigned from her position when she exercised her right to "resign" under Section 8.03 by claiming constructive discharge. In arriving at this position, the majority adopts the "this just can't be" rationale by stating that:

> It would be inexplicable to hold that the School Board is authorized to act as if Dr. Kegerise resigned voluntarily when she alleged that it created circumstances that compelled an involuntary resignation. As the trial court aptly noted, "the General Assembly provided a very limited methodology for removing superintendents and assistant superintendents in order to insulate them from arbitrary and capricious activities of the School Board and its individual members." (Trial court op. at 4.) To endorse the School Board's argument would essentially authorize a school board to create a condition that would constitute a termination as a matter of law, i.e., intolerable working conditions that would compel a reasonable person to resign,

but permit it to proceed as if an employee executed a voluntary resignation. The School Board's assertion would thwart the General Assembly's deliberate removal procedure for superintendents and, therefore, must fail. Accordingly, the School Board's argument that Dr. Kegerise's filing of a federal complaint alleging constructive discharge constituted a resignation is unpersuasive.

(Majority Opinion at 6-7.)

While the majority claims that this is inexplicable, this "can be" because the parties agreed to it in Section 8.03 of the contract. Moreover, this in no way "thwart[s] the General Assembly's deliberate removal procedure," Majority Opinion at 7, because there is nothing in the School Code that limits how a school superintendent can exercise his or her right to resign. In this case, that is set out in Section 8.03 of Dr. Kegerise's contract, which specifically deals with resignation caused by constructive discharge.

Section 8.03 gave Dr. Kegerise the option to resign without advance notice by claiming constructive discharge, presumably with the remedy that she took – filing an action that claims 6 million dollars in damages. She exercised that option and nothing the School District did indicated that it had any intent to remove her as Superintendent. In fact, she exercised that option after the School District informed her that she had not been constructively discharged and that "*the [School] District*

*hopes and expects her to return to her duties as Superintendent*" after her stress-related medical issues were resolved.[5] (R.R. at 72a.)

---

[5] In its response to the dissenting opinion, the majority first claims that the School District did not accept her resignation based on constructive termination and, second, that a school district can only accept a resignation authorized in the contract in accordance with the removal provisions set forth in Section 1080 of the School Code. 24 P.S. §10-1080. The Pennsylvania Public School Code (School Code) of 1949 is the Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 – 27-2702. Let us examine each of those issues.

In its first mention of Section 8.03 of the Superintendent's contract, the majority does not dispute that this provision allows Dr. Kegerise to resign for "constructive termination." Instead, the majority seems to suggest that this provision is not applicable because the School District somehow did not accept her resignation based on Section 8.03. However, there is no requirement under this provision, the School District accept her resignation because the contract gives her the unilateral right to exercise that provision.

In any event, the majority bases that argument on the April 16, 2014 letter quoted previously in the dissenting opinion in which the School District's counsel, in response to letters from Dr. Kegerise's counsel that she had been constructively discharged, stated "Dr. Kegerise is and remains the Superintendent of Schools at [the School District] pursuant to the contract between her and the Board." (R.R. at 71a.) This letter was the School District's position prior to her sworn federal complaint in which she swore under oath that she was constructively discharged, leading to its decision to accept her resignation. It also claims that the School District did not accept her resignation under Section 8.03 based on a selective quote from an April 22, 2014 letter from the School District's counsel to Dr. Kegerise's counsel that "she breached her employment contract because she failed to provide the requisite 60 days-notice of her resignation," which seems to indicate that the School District never accepted her resignation based on constructive termination. (R.R. at 257a.) Without saying so, the majority seems to be saying that since Section 8.03 provides that she could resign without notice for constructive termination, that it was not invoking that provision. Based on those two reasons, the majority concluded that "the Dissent's rationale would essentially authorize a contractual provision [Section 8.03] that the [School District] disputes has ever occurred."

Let us take a look at the full paragraph that the majority selectively quotes:

> As you know the Susquehanna Township School Board voted
> at last night's meeting to formally accept the resignation of Dr. Susan
> Kegerise effective April 17, 2014. This is based upon her most recent
> filing in the Federal Middle District Court at docket no 1:14-cv-

**(Footnote continued on next page…)**

DRP - 10

00747-WWC, in which she claimed that she was "constructively terminated," et al..  I note that you received a letter on behalf of your client on April 14, 2014 in which Michael Miller advised that "Dr. Kegerise is and remains the Superintendent of School [s] at Susquehanna Township School District pursuant to the contract between she and the Board." (*See* copy of letter attached hereto for your reference).   Despite this formal advice, she signed her verification on April 10, 2014 and the suit was filed on April 17, 2014.   Accordingly, pursuant to the contract with the Board, she breached the terms of the contract and failed to provide sixty (60) days notice.  (*See* paragraph 8.03 of her contract attached hereto). Her pay, benefits, health care, emoluments and any terms of her contract have ceased effective April 17, 1014.

From this paragraph, the School District stated that it was accepting her resignation based on her claim of constructive termination under Section 8.03.  Whether the School District was correct in what emoluments she is entitled to as the result of the acceptance of her resignation for her constructive termination would be decided in the federal litigation.

The other basis the majority gives with the dissent seems to be that Section 8.03, while it allows a resignation for constructive termination, is that it is superseded by Section 1080 of the School Code, 24 P.S. §10-1080, which provides for the removal of School Superintendents.  In doing so, the majority seemingly takes the position that the only way a school district can accept a resignation is by removing the superintendent.  It arrives at that position based on the last sentence of the following quote from *Burns v. Board of Directors of Uniontown Area School District*, 748 A.2d 1263, 1279 (Pa. Cmwlth. 2000):

In the instant case, although there is a contractual relationship, there is also a clear duty in the School Code for a duly elected district superintendent to be elected by the Board, to have his compensation set by the Board and, once elected, there are clear statutory duties imposed upon the superintendent to be responsible for the performance of statutory duties.   The relationship between a superintendent, a school board and a school district is, therefore, not merely contractual, but is also statutory.[16]

Footnote 16 provides those statutory provisions as:  "Sections 1071 through 1081 of the School Code, 24 P.S. §§10-1071 through 10-1081."  While, admittedly, the relationship between the superintendent and the school district is not merely contractual but is also statutory, there has to be a
**(Footnote continued on next page…)**

I recognize that being a school superintendent is a difficult job subject to stress from parents, teachers and, yes, from members of the school board who attempt to interfere with the day-to-day operation of schools. But as the majority points out, a school superintendent can only be removed in limited circumstances. Being a member of a school board, though, is also difficult. Unpaid, the school board is required to spend an enormous amount of time and be subject to enormous stress attempting to address concerns of parents and the people that elected them, other Board members who may not agree with their position, and, yes, from the school superintendent, who may not agree with the school board or one of its member's positions.

If a school superintendent has conflict with a school board, a school superintendent can either resign or attempt to accommodate those elected officials and stay on suffering from what he or she considers ill-conceived positons or the ill-

(continued…)

statutory provision that the contract provision is in conflict. None of those provisions of the School Code deal with how a resignation is to be accepted or deal with the option by a superintendent to resign by claiming constructive discharge.

Somehow, the majority takes the leap that just because Section 1080 of the School Code is one of those provisions mentioned, that the only way a school district can accept a resignation under the terms set forth in a superintendent's contract is under that provision. It simply does not apply. Section 1080 deals with removals of superintendents, who can only be removed "for neglect of duty, incompetency, intemperance, or immorality." 24 P.S. §10-1080. The School District never mentioned that it intended to remove Dr. Kegerise, only that it was accepting her resignation under Section 8.03 of the contract. Remember, Dr. Kegerise was the moving party: she was the one that initially maintained that she was constructively terminated; she was the one that rejected the School District's position that she remain the Superintendent; and, notwithstanding all of that, she filed an action in federal court wherein she swore that she was constructively discharged. Then, and only then, did the School District accept her resignation.

DRP - 12

tempered conduct of some members of the school board, knowing that he or she can only be removed before his or her contract is up only for narrow statutorily defined reasons. Moreover, if a school superintendent is being precluded from pursuing his or her statutory duties by a school board, then he or she can bring an action in mandamus to stop the school board from doing so. *Pittenger v. Union Area School Board*, 356 A.2d 866 (Pa. Cmwlth. 1976). Or, as here, Dr. Kegerise can avoid that purported stress and conflict by exercising her contractual option and say "enough is enough" to the Board – "you have caused me so much stress that I am no longer capable of performing my job and I resign and I will sue you for damages." Dr. Kegerise, by the terms of her contract, has to pick an option – stay and tough it out or, as here, resign and sue – but not both.

Once she elected to resign and sue, the Board acted within its discretion to accept that decision and mandamus does not lie.

_____
DAN PELLEGRINI, Senior Judge